STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

David J. BALLIETTE, Defendant-Appellant.

Supreme Court

*No. 2009AP472. Oral argument January 4, 2011.
—Decided July 19, 2011.*

2011 WI 79

(Also reported in 805 N.W.2d 334.)

For the Plaintiff-Respondent-Petitioner the cause was argued by *Daniel J. O'Brien, Assistant Attorney General,* with whom on the briefs was *J.B. Van Hollen, Attorney General.*

For the Defendant-Appellant there was a brief and oral argument by *Steven D. Grunder, Assistant State Public Defender.*

An amicus curiae brief was filed by *Robert R. Henak, Henak Law Office, S.C.,* for Wisconsin Association of Criminal Defense Lawyers.

¶ 1. DAVID T. PROSSER, J. This is a review of an unpublished decision of the court of appeals,[1] reversing a decision and order of the Winnebago County Circuit Court, Karen L. Seifert, Judge. This case requires us to determine whether the defendant is entitled to an evidentiary hearing on the basis of his conclusory allegation in a Wis. Stat. § 974.06 (2007–08)[2] motion for a new trial that his postconviction counsel was ineffective for not raising in a Wis. Stat. § 974.02 motion and on direct appeal additional ineffective assistance of counsel claims against his trial counsel.

¶ 2. We conclude that the defendant is not entitled to an evidentiary hearing because the allegations in his § 974.06 motion do not provide sufficient material facts that, if proven, demonstrate an entitlement to the relief sought.

¶ 3. The defendant's motion focused attention on the wrong counsel; it was conclusory because it failed to carefully address the two elements of ineffective assistance of counsel set out in *Strickland v. Washington,* 466 U.S. 668 (1984); and it generally ignored the "five 'w's' and one 'h' " methodology outlined in *State v. John Allen,* 2004 WI 106, 274 Wis. 2d 568, 682 N.W.2d 433 (*John Allen*), which guide the court in meaningfully evaluating the claim. The motion failed to say who would be called as a witness at an evidentiary hearing and what their testimony was likely to prove. In at-

---

[1] *State v. Balliette,* No. 2009AP472, unpublished slip op. (Wis. Ct. App. March 10, 2010).

[2] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

tempting to construct a better defense for a retrial, Balliette did not do enough to show that a new trial was required.

¶ 4. In sum, the § 974.06 motion was insufficient. Accordingly, the decision of the court of appeals is reversed.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶ 5. On August 30, 1999, David J. Balliette (Balliette) drove his car after consuming six to seven beers and two shots of liquor at the Ridgeway Bar in Neenah. As Balliette was driving west on County Highway GG, he came upon a Pontiac Firebird driven by Michele Thein (Thein). In the process of preparing to turn left into her driveway, Thein slowed down. When she slowed down, Balliette attempted to pass her in the left lane. As Thein turned left, Balliette struck the Pontiac, driving both vehicles into the ditch. After the collision, Thein was pronounced dead as a result of substantial head trauma.

¶ 6. Officer Charles Marousek of the Winnebago County Sheriff's Department was the second officer to respond to the accident. He spoke with Balliette and obtained Balliette's statement about drinking. He also noticed a strong odor of alcohol on Balliette's breath and observed that his speech was slurred. Officer Marousek then administered three field sobriety tests, all of which Balliette failed. Officer Marousek had Balliette perform a preliminary breath test, which resulted in a reading of .201 percent breath alcohol. At this point, Balliette was taken into custody and transported to Mercy Medical Center. Approximately two hours after the accident, Balliette provided a blood sample at the hospital. It showed a blood alcohol content of .183, which was extrapolated to .21 blood alcohol content at the time of the crash.

¶ 7. Balliette was subsequently charged with homicide by intoxicated use of a motor vehicle in violation of Wis. Stat. § 940.09(1)(a) and homicide by use of a motor vehicle with a prohibited alcohol concentration in violation of Wis. Stat. § 940.09(1)(b). Balliette also was charged with operating after revocation, an offense to which he pled guilty before trial.

¶ 8. At trial, Balliette claimed that the crash would have occurred regardless of his intoxication level. He asserted that Thein braked suddenly and pulled to the right, making room for him to pass. He argued that by attempting to pass on the left, he executed a normal passing maneuver. Balliette claimed that after beginning to execute this maneuver, he noticed Thein's brake lights when he was about six to seven car lengths behind Thein. He asserted that he applied his brakes and skidded into her door as Thein turned into him.[3]

¶ 9. The State called two accident reconstruction experts to dispute Balliette's defense. Both experts concluded that Balliette's version of the story was not possible, due to the skid marks left by Balliette's vehicle and the lack of skid marks from Thein's vehicle. The experts testified that Balliette had ample distance, a clear view, and plenty of opportunity to decelerate and avoid the collision. Balliette's trial counsel, Attorney Kevin Musolf, retained an accident reconstruction expert named Charles Scalia. Attorney Musolf did not, however, call the expert at trial. The jury found Balliette guilty, and he was sentenced to 40 years in prison.

¶ 10. Attorney Edward Hunt was assigned as Balliette's postconviction counsel. Attorney Hunt raised four claims, including two for ineffective assistance of

---

[3] Balliette also testified that Thein did not have her turn signal on.

trial counsel. Attorney Hunt asserted that Attorney Musolf erred (a) by failing to request the insertion of language in a jury instruction that would have "explained and clarified" how the victim's "conduct and acts" may have provided the defendant with an affirmative defense; and (b) by failing to object to the court's consideration of victim impact statements at sentencing without first providing Balliette the opportunity to review the statements. Attorney Hunt did not, however, raise a claim for ineffective assistance of trial counsel for Attorney Musolf's failure to present an accident reconstruction expert. The court granted Balliette an evidentiary hearing in which Attorney Hunt examined Attorney Musolf on the two issues of ineffective assistance of counsel. Attorney Musolf also prepared an affidavit on sentencing recommendations by two jurors that Attorney Hunt moved into evidence. The trial court ultimately denied all four postconviction claims, and the court of appeals affirmed.

¶ 11. In 2008 Balliette filed a motion pro se under Wis. Stat. § 974.06 asking for a new trial. He alleged ineffective assistance of *postconviction* counsel for Attorney Hunt's failure to raise certain claims of ineffective assistance of trial counsel.

¶ 12. Balliette's motion read in part as follows:

> I. Postconviction counsel was ineffective for failing to challenge on direct appeal several acts and omissions of trial counsel that constitute ineffective assistance.
>
> . . . .
>
> II. Postconviction counsel was ineffective for failing to challenge the court's ruling allowing evidence that the defendant's driver's license was revoked at the time of the accident.

367

¶ 13. Under I., Balliette wrote in part:

On direct appeal, Attorney Edward Hunt unsuccess-
fully challenged Attorney Kevin Musolf's failure to
request more specific jury instructions and failure to
object to letters submitted to the sentencing judge.
*Hunt failed to challenge other aspects of Musolf's con-
duct, which are detailed below.* (Citations omitted.)
(Emphasis added.)

¶ 14. Balliette attached to his motion a detailed
report by John DeRosia (DeRosia), a professional engi-
neer and accident reconstruction expert. In his report,
DeRosia questioned the conclusions of the State's ex-
perts and pointed out that one of the expert's conclu-
sions was based on an incorrect piece of evidence,
namely, that Thein's Pontiac did not have an anti-lock
brake system. DeRosia's report stated that such a
braking system was nearly universal in General Motors
vehicles at the time. Furthermore, pictures of the
Pontiac showed an "ABS" label—a common abbrevia-
tion for anti-lock braking system. This information
allegedly rebutted the State's trial testimony that if
Thein had braked suddenly, she would have left skid
marks. Based on these facts and other assertions,
DeRosia questioned the validity of the conclusions
made by the State's accident reconstruction experts.

¶ 15. Balliette's 16–page motion raised multiple
questions about the performance of his *trial counsel*.
His trial counsel did not present an accident recon-
struction expert at trial to rebut the two experts
presented by the State; did not correctly inform the
defendant or the court with respect to a lesser-included
offense; and should not have agreed to the wording of a
stipulation read to the jury about the defendant's re-
voked driver's license. The motion also asserted that his
trial counsel should have challenged the circuit court's

ruling allowing evidence that the defendant's license was revoked at the time of the accident. Balliette's motion did not focus on the performance of Attorney Hunt except to assert that he "failed to challenge [these] other aspects of Musolf's conduct." As a result, the circuit court denied Balliette's claim, ruling that Balliette had made merely conclusory allegations and did not provide a sufficient reason for raising the claim now rather than previously, and, therefore, an evidentiary hearing was not warranted. The circuit court denied Balliette's motion for reconsideration.

¶ 16. The court of appeals reversed and remanded for an evidentiary hearing, on the basis that Balliette's motion alleged sufficient material facts that, if true, would warrant relief. *Balliette*, No. 2009AP472, unpublished slip op. at 3–4. In addition, the court of appeals concluded that since this was a motion for ineffectiveness of postconviction counsel, Balliette alleged a sufficient reason for not previously raising the claim. *Id.* at 3.

¶ 17. The State petitioned this court for review of the court of appeals' order. We granted the petition on August 31, 2010.

## II. STANDARD OF REVIEW

■■

¶ 18. The issue in this case is whether Balliette's Wis. Stat. § 974.06 motion is sufficient on its face to entitle him to an evidentiary hearing on his ineffective assistance of postconviction counsel claim. Sufficiency of the motion is a question of law, which we review de novo. *John Allen,* 274 Wis. 2d 568, ¶ 9. If the motion raises sufficient facts that, if true, show that the defendant is entitled to relief, the circuit court must hold an evidentiary hearing. *Id.* However, if the motion does not

369

raise such facts, "or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the grant or denial of the motion is a matter of discretion entrusted to the circuit court. *Id.* (citing *State v. Bentley,* 201 Wis. 2d 303, 310–11, 548 N.W.2d 50 (1996); *Nelson v. State,* 54 Wis. 2d 489, 497–98, 195 N.W.2d 629 (1972)).

■■

¶ 19. Whether counsel was ineffective is a mixed question of fact and law. *State ex rel. Flores v. State,* 183 Wis. 2d 587, 609, 516 N.W.2d 362 (1994). The circuit court's findings of fact will not be disturbed unless shown to be clearly erroneous. *State v. McDowell,* 2004 WI 70, ¶ 31, 272 Wis. 2d 488, 681 N.W.2d 500. The ultimate conclusion as to whether there was ineffective assistance of counsel is a question of law. *Flores,* 183 Wis. 2d at 609.

## III. DISCUSSION

¶ 20. An analysis of Balliette's motion for postconviction relief under Wis. Stat. § 974.06 requires the application of several different tests. To evaluate the sufficiency of the allegations in his motion, we must consider his ineffective assistance of counsel claims in relation to the established pleading requirements for a § 974.06 motion. We first revisit the constitutional test for ineffective assistance of counsel as articulated in *Strickland.* Second, we review the pleading requirements derived from past cases involving § 974.06 motions, including "the five 'w's' and one 'h' test" articulated in *John Allen,* 274 Wis. 2d 568. Finally, we apply these tests and principles to Balliette's motion.

## A. Ineffective Assistance of Postconviction Counsel

██

¶ 21. Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel. *Strickland,* 466 U.S. at 686. The Supreme Court explained that a convicted defendant must show two elements to establish that his counsel's assistance was constitutionally ineffective: First, that counsel's performance was deficient; second, that the deficient performance resulted in prejudice to the defense. *Id.* at 687.

¶ 22. The defendant does not show the first element simply by demonstrating that his counsel was imperfect or less than ideal. The Supreme Court has made clear that, under the constitution, a defendant is entitled to "reasonably effective assistance" by a "reasonably competent attorney." *Id.* at 687–88. Thus, a court looks to whether the attorney's performance was reasonably effective considering all the circumstances. *Id.* at 688.

¶ 23. The reasonableness of counsel's conduct must be evaluated "on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

¶ 24. The defendant may not presume the second element, prejudice to the defense, simply because certain decisions or actions of counsel were made in error. *Id.* at

692–93. Rather, the defendant must show that "*particular* errors of counsel were unreasonable" and "that they *actually* had an adverse effect on the defense." *Id.* at 693 (emphasis added). This, too, is an inquiry that requires a court to consider the surrounding circumstances. *Id.* After all, "[A]n act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.* The proper test for prejudice in the context of an ineffective assistance of counsel claim is, therefore, whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

¶ 25. Importantly, counsel is "strongly presumed to have rendered" adequate assistance within the bounds of reasonable professional judgment. *Id.* at 690; *see also State v. Guerard,* 2004 WI 85, ¶ 43, 273 Wis. 2d 250, 682 N.W.2d 12. A court must be vigilant against the skewed perspective that may result from hindsight, and it may not second-guess counsel's performance solely because the defense proved unsuccessful. *Strickland,* 466 U.S. at 689; *see also State v. Harper,* 57 Wis. 2d 543, 556–57, 205 N.W.2d 1 (1973) ("In considering alleged incompetency of counsel, one should not by hindsight reconstruct the ideal defense.").

¶ 26. Counsel's decisions in choosing a trial strategy are to be given great deference. Indeed, the Court in *Strickland* went so far as to say that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690. Even decisions made with less than a thorough investigation may be sus-

tained if reasonable, given the strong presumption of effective assistance and deference to strategic decisions. *State v. Carter,* 2010 WI 40, ¶ 23, 324 Wis. 2d 640, 782 N.W.2d 695 (citing *Strickland,* 466 U.S. at 690–91).

¶ 27. In sum, the law affords counsel the benefit of the doubt; there is a presumption that counsel is effective unless shown otherwise by the defendant.

■■■

¶ 28. This presumption is not limited to trial counsel. It applies to postconviction and appellate counsel as well. *See Smith v. Robbins,* 528 U.S. 259, 285–86 (2000) (applying the *Strickland* analysis to a claim of ineffective assistance of counsel on direct appeal); *United States v. Cook,* 45 F.3d 388, 392 (10th Cir. 1995); *see generally* Lissa Griffin, *The Right to Effective Assistance of Appellate Counsel,* 97 W. Va. L. Rev. 1 (1994). Consequently, a motion for a new trial under § 974.06 based on ineffective assistance of postconviction counsel must lay out the traditional elements of deficient performance and prejudice to the defense.

### B. Method of Raising Ineffective Assistance of Postconviction Counsel

■■■

¶ 29. The first opportunity after trial to raise the issue of counsel's ineffectiveness at trial is in a postconviction motion under § 974.02. Postconviction counsel may move for a new trial on grounds that trial counsel was constitutionally ineffective. The circuit court's denial of this motion is subject to direct appeal. "Claims of ineffective trial counsel . . . cannot be reviewed on appeal absent a postconviction motion in the trial court." *State ex rel. Rothering v. McCaughtry,* 205 Wis. 2d 675, 677–78, 556 N.W.2d 136 (Ct. App. 1996).

¶ 30. In *State v. Machner,* 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979), a defendant convicted of sexual assault accused his trial counsel of ineffective assistance on multiple grounds. The trial court heard testimony at a postconviction hearing, but trial counsel did not testify. *Id.* at 804. The postconviction motion was denied. *Id.*

¶ 31. In its decision, the court of appeals made several observations:

> This court is of the opinion that where a counsel's conduct at trial is questioned, it is the duty and responsibility of subsequent counsel to go beyond mere notification and to require counsel's presence at the hearing in which his conduct is challenged. We hold that it is a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel. We cannot otherwise determine whether trial counsel's actions were the result of incompetence or deliberate trial strategies. In such situations, then, it is the better rule, and in the client's best interests, to require trial counsel to explain the reasons underlying his handling of a case.
>
> In the instant case, the record is devoid of any testimony from defendant's trial counsel regarding his conduct in the defense of his client. Such an offer of proof is necessary and, without more, we decline to find that the manner in which counsel defended the appellant was of such a nature as to cause us to find him incompetent.

*Id.* The evidentiary hearing to evaluate counsel's effectiveness, which includes counsel's testimony to explain his or her handling of the case, is now called a *Machner* hearing.

██ ██

¶ 32. To bring a postconviction motion alleging ineffective assistance of *appellate* counsel, a defendant is required to file a petition for habeas corpus with the appellate court that heard the appeal. *State v. Knight,* 168 Wis. 2d 509, 520, 484 N.W.2d 540 (1992). When, however, the conduct alleged to be ineffective is post-conviction counsel's failure to highlight some deficiency of trial counsel in a § 974.02 motion before the trial court, the defendant's remedy lies with the circuit court under either Wis. Stat. § 974.06 or a petition for habeas corpus. *Rothering,* 205 Wis. 2d at 679, 681.

¶ 33. There is no dispute that Balliette has filed his motion for a new trial in the proper court.

C. Motions Under Wis. Stat. § 974.06

¶ 34. After the time for appeal or postconviction remedy provided in Wis. Stat. § 974.02 has expired, a prisoner in custody under sentence of a court may bring a motion to vacate, set aside, or correct a sentence, utilizing the procedure set out in Wis. Stat. § 974.06. Section 974.06(1) allows such a motion where the prisoner is claiming that (1) his sentence was imposed in violation of the constitution; (2) the court imposing the sentence was without jurisdiction; or (3) the sentence was in excess of the maximum or otherwise subject to collateral attack. *State v. Aaron Allen,* 2010 WI 89, ¶ 22, 328 Wis. 2d 1, 786 N.W.2d 124 (*Aaron Allen*). A claim that trial counsel provided ineffective assistance is a claim that the defendant's sentence was imposed in violation of the constitution.[4]

---

[4] It should be noted that a defendant may raise only constitutional or jurisdictional issues in a Wis. Stat. § 974.06 motion. *State v. Evans,* 2004 WI 84, ¶ 33, 273 Wis. 2d 192, 682

¶ 35. A motion for relief under § 974.06 "may be made at any time." Wis. Stat. § 974.06(2). However, a defendant must meet certain requirements. These requirements are set out in Wis. Stat. § 974.06(4):

> (4) All grounds for relief available to a person under this section must be raised in his or her original, supplemental or amended motion. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the person has taken to secure relief may not be the basis for a subsequent motion, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended motion.

██

¶ 36. If a defendant did not file a motion for relief under Wis. Stat. § 974.02 or a direct appeal, he is not subject to the "sufficient reason" requirement of § 974.06(4). *State v. Lo,* 2003 WI 107, ¶ 44 n.11, 264 Wis. 2d 1, 665 N.W.2d 756 (citing *Loop v. State,* 65 Wis. 2d 499, 222 N.W.2d 694 (1974)). However, because the purpose of § 974.06 is to consolidate all claims of error into one motion or appeal, claims that could have been raised in the defendant's direct appeal or in a previous § 974.06 motion are barred from being raised in a subsequent § 974.06 motion absent a showing of a sufficient reason why the claims were not raised on direct appeal or in a previous § 974.06 motion. *Lo,* 264

N.W.2d 784 (citing *Peterson v. State,* 54 Wis. 2d 370, 381, 195 N.W.2d 837 (1972); *State v. Nicholson,* 148 Wis. 2d 353, 369, 435 N.W.2d 298 (Ct. App. 1988)). Thus, "a § 974.06 motion may not be used to raise challenges to sufficiency of the evidence, jury instructions, evidentiary rulings, or procedural matters." *Evans,* 273 Wis. 2d 192, ¶ 33.

Wis. 2d 1, ¶ 44 (citing *State v. Escalona-Naranjo,* 185 Wis. 2d 168, 517 N.W.2d 157 (1994)).

¶ 37. In *Rothering,* the court of appeals opined that "in some circumstances . . . ineffective postconviction counsel" may constitute "sufficient reason as to why an issue which could have been raised on direct appeal was not." *Rothering,* 205 Wis. 2d at 682. This observation was noted in *State v. Love,* 2005 WI 116, ¶ 31 n.11, 284 Wis. 2d 111, 700 N.W.2d 62, and in *Aaron Allen,* 328 Wis. 2d 1, ¶ 85. However, the *Aaron Allen* court indicated that the trial court would be required to engage in fact-finding to rule on the sufficiency of the reason. *Id.*

¶ 38. The issue in this case is whether Balliette's conclusory allegation that his postconviction counsel was ineffective for not raising additional challenges to the effectiveness of his trial counsel is sufficient to require an evidentiary hearing.

### D. Test For the Sufficiency of the Reason

¶ 39. When is a defendant entitled to an evidentiary hearing on his Wis. Stat. § 974.06 motion?

¶ 40. As a general rule, a motion must "[s]tate with particularity the grounds for the motion and the order or relief sought." Wis. Stat. § 971.30. When the relief sought is a new trial based upon the alleged ineffective assistance of postconviction counsel, this statute appears to require some particularity of how the defendant intends to show that postconviction counsel's performance was objectively deficient and how that performance resulted in prejudice to the defense.

¶ 41. Motions under Wis. Stat. § 974.06, especially motions related to ineffective assistance of counsel, have developed their own particularized standards.

377

¶ 42. In *Nelson v. State,* 54 Wis. 2d 489, 195 N.W.2d 629 (1972), the court considered a defendant's motion to vacate a guilty plea under § 974.06 (1970). *Id.* at 494. The defendant argued that an evidentiary hearing is required whenever a motion is filed to vacate a plea of guilty, unless the motion is patently frivolous. *Id.* at 495. After an extensive review of precedent from other jurisdictions, the court rejected this argument. *Id.* at 495–97. Instead, this court said specifically: "[I]f a motion to withdraw a guilty plea after judgment and sentence alleges facts which, if true, would entitle the defendant to relief, the trial court must hold an evidentiary hearing." *Id.* at 497.

¶ 43. This language squares with § 974.06(3), which reads in part: "(3) Unless the motion and the files and records of the action conclusively show that the person is entitled to no relief, the court shall: . . . (c) Grant a prompt hearing."

¶ 44. But then the *Nelson* court went on:

> However, if the defendant fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusionary allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing. It is incumbent upon the trial court to form its independent judgment after a review of the record and pleadings and to support its decision by written opinion.

*Id.* at 497–98.

¶ 45. With this language, the *Nelson* court emphasized the fact that a § 974.06 motion places the burden of proper pleading upon the defendant inasmuch as the motion comes "after judgment and sentence." *Id.* at 497. It also gave the circuit court three

grounds to deny the motion without conducting an evidentiary hearing. *Id.* at 497–98.

¶ 46. The *Nelson* decision was followed in *Smith v. State,* 60 Wis. 2d 373, 378, 210 N.W.2d 678 (1973); *Levesque v. State,* 63 Wis. 2d 412, 418–21, 217 N.W.2d 317 (1974); and *State v. Washington,* 176 Wis. 2d 205, 215–16, 500 N.W.2d 331 (Ct. App. 1993), among others.

¶ 47. In 1996 this court heard *State v. Bentley,* in which the defendant sought to withdraw his guilty plea on the basis of ineffective assistance of counsel. *Id.* at 306.

¶ 48. Relying on *Nelson,* the court reiterated that a defendant must be afforded an evidentiary hearing if he brings a motion alleging facts that, if true, would entitle him to relief. *Id.* at 309–10. The court held that in Bentley's case, however, the defendant was not entitled to an evidentiary hearing because his motion failed to allege "any factual assertions which would allow a court to meaningfully assess Bentley's claim." *Id.* at 316. Without such facts, his claim of ineffective assistance of counsel was "merely conclusory." *Id.* at 318.

¶ 49. Although the *Bentley* decision relied on *Nelson,* it somewhat restated the test:

> *Nelson* sets forth a two-part test which necessitates a mixed standard of appellate review. If the motion on its face alleges facts which would entitle the defendant to relief, the circuit court has no discretion and must hold an evidentiary hearing. Whether a motion alleges facts which, if true, would entitle a defendant to relief is a question of law that we review de novo.
>
> However, if the motion fails to allege sufficient facts, the circuit court has the discretion to deny a postconviction motion without a hearing based on any one of the three factors enumerated in *Nelson.* When

379

reviewing a circuit court's discretionary act, this court uses the deferential erroneous exercise of discretion standard.

*Bentley*, 201 Wis. 2d at 310–11 (citations omitted).

¶ 50. The apparent inconsistency between the test in *Nelson* and the test in *Bentley* was discussed extensively by dissents in *Love,* 284 Wis. 2d 111, ¶¶ 67–73 (Prosser, J., dissenting), and *State v. Howell,* 2007 WI 75, ¶¶ 148–153, 301 Wis. 2d 350, 734 N.W.2d 48 (Prosser, J., dissenting), prompting a clarification from the court. The majority in *Howell* stated: "The correct interpretation of *Nelson/Bentley* is that an evidentiary hearing is not mandatory if the record as a whole conclusively demonstrates that defendant is not entitled to relief, even if the motion alleges sufficient nonconclusory facts." *Id.*, ¶ 77 n.51.

¶ 51. The court has made overlapping efforts to explain and flesh out the pleading requirements of a § 974.06 motion, employing the *Nelson* standards. One effort is theoretical and general. The other effort is practical and specific.

¶ 52. In *John Allen,* the court contrasted *post*conviction motions with motions before trial, noting that at pretrial, the defendant has the whole criminal process before him and may make a motion at a later date. *Id.*, ¶ 11. Therefore, even if the motion on its face does not allege facts to entitle the defendant to relief, a defendant is generally "allowed an opportunity to develop the factual record." *Id.* (citing *State v. Velez,* 224 Wis. 2d 1, 18, 589 N.W.2d 9 (1999)). "This safeguard protects a defendant's due process rights." *John Allen,* 274 Wis. 2d 568, ¶ 11.

¶ 53. By contrast, a postconviction motion entails more demanding standards. "Not all motions require

evidentiary hearings." *Id.*, ¶ 10. The policy underlying higher standards for postconviction motions is that "once the criminal process has been completed and the defendant convicted and sentenced, the reasons that support a lesser sufficiency standard for pretrial motions are no longer compelling, and instead, we must consider the strong policy that favors finality." *Id.*, ¶ 11 (citing *Teague v. Lane,* 489 U.S. 288, 309 (1989)).

¶ 54. In *State v. Hampton,* 2004 WI 107, 274 Wis. 2d 379, 683 N.W.2d 14, we discussed the difference between *Bentley*-type cases—which spark the normal *non*-plea colloquy motion under § 974.06—and *Bangert*-type cases involving an allegedly defective plea colloquy in which a motion homes in on the court transcript. *Id.*, ¶¶ 50–65. *See also State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

¶ 55. In a *Bangert*-type case, the defendant points to a specific deficiency in the plea colloquy and asserts that he lacked the requisite understanding to make a knowing, intelligent, and voluntary plea. Because evidence to support the defendant's motion is contained in the court transcript, the State bears the burden of proof in any *Bangert* hearing.

¶ 56. A *Bangert*-type "allegation that a defendant did not understand something is qualitatively different from the allegation of a legal conclusion such as 'counsel's performance was deficient and resulted in prejudice to the defendant.'" *Hampton,* 274 Wis. 2d 379, ¶ 58. The latter allegation, the court said, cries out "for supporting facts, and these supporting facts must be alleged to satisfy the defendant's burden for an evidentiary hearing." *Id.* The court continued:

> [T]he *Bentley* court explained that normally a defendant is entitled to withdraw a guilty plea after sentenc-

ing only upon a showing of "manifest injustice by clear and convincing evidence." When, for example, the basis for this injustice is an allegation that defendant involuntarily entered a plea because of the ineffective assistance of counsel, his claim raises questions about both deficient performance and prejudice. To establish deficient performance, a defendant must necessarily provide the factual basis for the court to make a legal determination. To show prejudice, a defendant must do more than merely allege that he would have pleaded differently but for the alleged deficient performance. He must support that allegation with "objective factual assertions."

*Id.*, ¶ 60 (citations omitted).

¶ 57. In addition, the *Hampton* court observed that:

*Bentley*-type allegations will often depend on facts outside the record. *To ask the court to examine facts outside the record in an evidentiary hearing requires a particularized motion with sufficient supporting facts to warrant the undertaking.*

. . . .

In *Bentley*-type cases, the defendant has the burden of making a *prima facie* case for an evidentiary hearing, and if he succeeds, he still has the burden of proving all the elements of the alleged error, such as deficient performance and prejudice. The defendant must prove the linkage between his plea and the purported defect. The defendant's proof must add up to manifest injustice.

Consequently, the requisite specificity required for establishing a *prima facie* case mirrors the defendant's ultimate burden of proof. It also reflects the substantive basis for this court's shift of the burden of proof.

*Id.*, ¶¶ 61, 63–64 (first emphasis added).

¶ 58. *John Allen* and *Hampton* provide the theoretical foundation for the specificity required in a § 974.06 motion, namely, the policy favoring finality, the pleading and proof burdens that have shifted to the defendant in most situations after conviction, and the need to minimize time-consuming postconviction hearings unless there is a clearly articulated justification for them.

¶ 59. *John Allen* also provides a practical and specific blueprint for applying this theory: the five "w's" and one "h" test, "that is, who, what, where, when, why, and how. A motion that alleges, *within the four corners of the document itself,* the kind of material factual objectivity we describe . . . will necessarily include sufficient material facts for reviewing courts to meaningfully assess a defendant's claim." *John Allen,* 274 Wis. 2d 568, ¶ 23 (emphasis added).

E. Applying Wis. Stat. § 974.06
Pleading Principles to Balliette's Motion

¶ 60. A § 974.06 motion for a new trial based on an allegation that postconviction counsel was constitutionally ineffective must apply the principles set out above.

¶ 61. Balliette's objective is to win a new trial. He must allege facts which, if true, would entitle him to a new trial. An evidentiary hearing is nothing more than an intermediate step toward his objective. It is not an end in itself. An evidentiary hearing would merely provide Balliette with the opportunity to prove his pleaded claims that he is entitled to a new trial. If the motion contained all the *proof* necessary to show that he was entitled to a new trial, he would not need an evidentiary hearing.

383

¶ 62. Balliette's § 974.06 motion came *after* his § 974.02 motion and direct appeal. The claims raised in his § 974.06 motion certainly could have been raised in his initial motion and direct appeal. Thus, under our decisions in *Escalona-Naranjo* and *Lo,* Balliette was required to provide "a sufficient reason as to why an issue which could have been raised on direct appeal was not." *Rothering,* 205 Wis. 2d at 682. That reason is the alleged ineffectiveness of postconviction counsel.

¶ 63. However, for Balliette to obtain an evidentiary hearing based on this reason, he was required to do more than assert that his postconviction counsel was ineffective for failing to challenge on direct appeal several acts and omissions of trial counsel that he alleges constituted ineffective assistance. He was required to do more than assert that postconviction counsel "failed to challenge [these aspects of Attorney Musolf's] conduct." Because the viability of Balliette's § 974.06 motion was entirely dependent upon his showing that *postconviction* counsel was constitutionally ineffective, he was required to allege that Attorney Hunt's "performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687.

¶ 64. To show that the performance was deficient, Balliette was required to set forth allegations that Attorney Hunt made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id.* For example, Balliette could have alleged such deficiency by showing that counsel's performance was "objectively unreasonable . . . in failing to find arguable issues to appeal," as the Supreme Court described it in *Smith,* 528 U.S. at 285.

¶ 65. Balliette's October 31, 2008, motion identifies "several acts and omissions" of trial counsel that he

believes constitute ineffective assistance and should have been raised by postconviction counsel. But this is, at best, only part of what is required in a § 974.06 motion. Balliette was required to assert *why* it was deficient performance for postconviction counsel not to raise these issues. As the Court noted in *Smith v. Murray,* 477 U.S. 527, 534 (1986), counsel's "deliberate, tactical decision not to pursue a particular claim is the very antithesis of the kind of circumstance that would warrant excusing a defendant's failure to adhere to a State's legitimate rules for the fair and orderly disposition of its criminal cases."

¶ 66. Moreover, counsel's mistaken perception that a claim had little chance of success does not necessarily change the result. *Id.* "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it," *Murray v. Carrier,* 477 U.S. 478, 486–87 (1986), does not necessarily constitute deficient performance.

¶ 67. Thus, Balliette's § 974.06 motion was required to make the case of Attorney Hunt's deficient performance. It is undisputed that Attorney Hunt did raise two issues of ineffective assistance of trial counsel in his § 974.02 motion after trial and that he succeeded in winning a *Machner* hearing on these claims. At that hearing, Attorney Hunt questioned Attorney Musolf. To successfully plead ineffective assistance of postconviction counsel against this background, Balliette's 2008 § 974.06 motion needed to do more than point to issues that postconviction counsel did not raise. He needed to show that failing to raise those issues fell below an objective standard of reasonableness. This effort would have required him to "overcome the presumption that, under the circumstances, the challenged action 'might

385

be considered sound . . . strategy.' " *Strickland,* 466 U.S. at 689 (citing *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)). His legal attack would have required facts, presented in a "five 'w's' and one 'h' " format.

¶ 68. Balliette also needed to show *how* he intended to establish deficient performance if he was given the chance at an evidentiary hearing. The evidentiary hearing is not a fishing expedition to discover ineffective assistance; it is a forum to prove ineffective assistance. Both the court and the State are entitled to know *what* is expected to happen at the hearing, and *what* the defendant intends to prove.

¶ 69. Balliette's motion does not assert that the issues that Attorney Hunt failed to raise are obvious and very strong, and that the failure to raise them cannot be explained or justified. Neither does his motion allege facts that would support his ultimate objective. The motion does not set forth what Balliette intended to prove at an evidentiary hearing, if one were granted.

¶ 70. Balliette's motion also fails to assert how Attorney Hunt's purported deficient performance resulted in prejudice to the defense. Had Attorney Hunt raised the issues laid out in Balliette's motion, he would very likely have been given an expanded *Machner* hearing, but it does not necessarily follow that he would have been given a new trial. Balliette's duty at this point was to allege facts, which, if true, would entitle him to a new trial.

¶ 71. Wisconsin Stat. § 805.18 is Wisconsin's harmless error statute:

> Mistakes and omissions; harmless error. (1) The court shall, in every stage of an action, disregard any

386

error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party.

(2) No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of selection or misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

Wis. Stat. § 805.18.

¶ 72. Two of Balliette's claims with regard to ineffective assistance of counsel would have been evaluated under harmless error rules, namely, the lesser included offense claim and the stipulation-wording claim. Neither claim is likely to have resulted in a new trial, because neither was so prejudicial to the defense as to undermine confidence in the outcome of his trial.

¶ 73. Trial counsel's failure to call an accident reconstruction expert appears on the surface to be more meaty. On the other hand, Balliette's defense at trial was and his defense at any retrial would be an attempt to shift responsibility for Michele Thein's death from a person who was operating after revocation (with a blood alcohol content of .21), to the victim herself, on grounds that the victim's driving prevented Balliette, who failed three field sobriety tests, from avoiding the collision. This defense requires real persuasion.

¶ 74. One jury already heard the argument that Thein's turn signal may not have been activated. Balliette's contention at trial was that Thein was "driving erratically." She allegedly pulled to the right of her

lane, thereby inviting Balliette to pass, then braked so suddenly and turned so sharply that he could not help running into her. He now claims the State's testimony, that Thein would have left skid marks had she operated her vehicle in that manner, could be rebutted by his expert's assertion that Thein's vehicle had an antilock braking system that did not leave traditional skid marks.

¶ 75. The problem with Balliette's account is that evidence of skid marks from Thein's vehicle would have benefited his defense. The absence of skid marks from her vehicle *may* be attributed to antilock brakes, but it can also be attributed to Thein slowing down so that no braking on her part was necessary. The absence of skid marks becomes important only if the fact-finder accepts the drunk driver's version of the incident.

¶ 76. Balliette's Wis. Stat. § 974.06 motion reads in part:

> He [Balliette] relied on his own testimony that Thein had been driving erratically, slowing down and then speeding up. He stated that she had slowed down to about 40 mph and pulled over towards the right side of the road. He took this action as a message from her that he could pass and, as it was a legal passing zone, he pulled out into the left lane. When he began to pass, there was no turn signal and no brake lights. *He first saw brake lights when he was about 6 or 7 car lengths behind her.* She braked real hard and turned almost simultaneously, at which point he slammed on the brakes, went into a skid, and hit her vehicle. Balliette contended that the accident and Thein's death occurred because she braked hard and turned left in front of his vehicle without warning, not because he was intoxicated. He was the only witness in his own behalf. (Emphasis added.)

¶ 77. This account is different from the statement of Balliette's counsel in this review:

Balliette provided a statement to one of the officers at the scene. In the statement, Balliette said . . . that he had been going about 58 miles per hour when he came up behind Thein's car. *He was about five car lengths behind her when she slowed down to about 40 miles per hour, at which point he decided to pass her.* Balliette said that Thein did not have a turn signal on, and as he tried to pass she "braked real hard and turned left," and the vehicles collided. (Emphasis added.)

¶ 78. These accounts from Balliette are not consistent. Especially coupled with the potential that any evidence about the presence or absence of skid marks can cut both ways, this inconsistency does not undermine confidence in the outcome of the trial. Rather, it reminds the court that judicial "scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689. We presume, as we must, that Attorneys Hunt and Musolf rendered adequate assistance within the bounds of reasonable professional judgment. *See id.* at 690. Without providing adequate, specific allegations in his § 974.06 motion, Balliette cannot and does not overcome this presumption.

## IV. CONCLUSION

¶ 79. We conclude that the defendant is not entitled to an evidentiary hearing because the allegations in his § 974.06 motion do not provide sufficient material facts that, if proven, demonstrate an entitlement to the relief sought. His motion focused attention on the wrong counsel; it was conclusory because it failed to carefully address the two elements of ineffective assistance for postconviction counsel set out in *Strickland;* and it generally ignored the "five 'w's' and one 'h' " methodology outlined in *John Allen,* which guide the court in meaningfully evaluating the claim. The mo-

tions failed to say who would be called as a witness at an evidentiary hearing and what this testimony was likely to prove. In attempting to construct a better defense for a retrial, Balliette did not do enough to show that a new trial was required.

¶ 80. For the reasons stated, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 81. ANN WALSH BRADLEY, J. (*dissenting*). Proceeding pro se, Balliette filed a 16–page motion setting forth detailed facts in support of his motion alleging that his trial counsel was constitutionally ineffective. He likewise alleged that his postconviction counsel was ineffective for failing to challenge these aspects of trial counsel's performance.

¶ 82. It is essential to keep in mind that this case is not about whether Balliette's motion is sufficient to entitle him to a new trial. No one asserts that it is. Rather, the question is whether Balliette's motion is sufficient to entitle him to an evidentiary hearing, where he would have the opportunity to show that his trial and postconviction attorneys rendered ineffective assistance of counsel.

¶ 83. I agree with the majority that a defendant filing a postconviction motion must demonstrate with some particularity that he is entitled to relief. I also agree that ineffective assistance of postconviction counsel can constitute a "sufficient reason" for overcoming the *Escalona-Naranjo* bar to successive postconviction motions.[1] *See State v. Love,* 2005 WI 116, ¶ 31 n.11,

---

[1] *State v. Escalona-Naranjo,* 185 Wis. 2d 168, 517 N.W.2d 157 (1994).

284 Wis. 2d 111, 700 N.W.2d 62; *Rothering v. McCaughtry*, 205 Wis. 2d 675, 678, 556 N.W.2d 136 (Ct. App. 1996).

¶ 84. I part ways with the majority because, in determining that Balliette's motion was insufficient, it appears to set up a series of uncertain pleading requirements that could ensnare pro se petitioners and experienced appellate attorneys alike. It further fails to appreciate the role that an evidentiary hearing plays in evaluating whether an attorney's performance was deficient.

¶ 85. Like the court of appeals, I conclude that Balliette has alleged facts sufficient to entitle him to an evidentiary hearing on his claims of trial counsel and postconviction counsel ineffectiveness. Accordingly, I respectfully dissent.

I

¶ 86. The majority acknowledges that the *Strickland* test applies to both claims of ineffective assistance of counsel.[2] Majority op., ¶ 28. It does not appear to take issue with the sufficiency of the facts Balliette set forth regarding trial counsel's performance. *See id.,* ¶ 15. Rather, it contends that Balliette's motion "focused attention on the wrong counsel" and failed to "carefully address the two elements of ineffective assistance of counsel set out in *Strickland*[.]" *Id.,* ¶ 3.

¶ 87. Balliette identified several acts and omissions which he asserts constitute deficient performance of trial counsel, and he asserted that his postconviction counsel was ineffective for failing to raise these issues. Nevertheless, the majority contends that "this is, at best, only part of what is required[.]" *Id.,* ¶ 65.

---

[2] *Strickland v. Washington,* 466 U.S. 668 (1984).

¶ 88. Under the majority's analysis, however, it is unclear what, precisely, is required. At times, the insufficiency appears to be a failure to properly format his motion. The majority contends: "His legal attack would have required facts, presented in a 'five 'w's' and one 'h' format." *Id.*, ¶ 67.

¶ 89. At other times, it appears that the insufficiency might be failure to utter heretofore unknown magic words. For example, the majority says that "Balliette's motion does not assert that the issues that [postconviction counsel] failed to raise are obvious and very strong[.]" *Id.*, ¶ 69.

¶ 90. At yet other times, the insufficiency appears to be substantive. The majority contends that Balliette was required to "show that failing to raise those issues fell below an objective standard of reasonableness" and "overcome the presumption that, under the circumstances, the challenged action might be considered sound strategy." *Id.*, ¶ 67.

¶ 91. It is unclear under the majority's analysis what, precisely, would be enough to "show" within the four corners of a motion that counsel's performance fell below an objective standard of reasonableness. Is it enough for Balliette to assert that he did not discuss the lack of expert testimony with his postconviction attorney and that Balliette believes that postconviction counsel overlooked it? Or, can a defendant simply make allegations about what he thinks his attorney will say at an evidentiary hearing? Is it enough for the defendant to assert that the attorney had no reasonable strategic reason for failing to make a claim?

¶ 92. The uncertain pleading requirements set by the majority are bound to baffle the bench and bar, not to mention pro se defendants, who are the typical drafters of postconviction motions. I would not set so uncertain a bar.

¶ 93. To the extent that the majority's new pleading requirements are substantive and require movants to identify the reasons underlying counsel's acts and omissions, *see id.,* ¶ 68, the majority fails to appreciate the role an evidentiary hearing plays in the evaluation of an ineffective assistance of counsel claim. As the majority explains, "an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.,* ¶ 24. The determination of whether the attorney's performance was deficient requires the court to "focus on counsel's perspective at the time of trial" or postconviction. *State v. Foy,* 206 Wis. 2d 629, 640, 557 N.W.2d 494 (Ct. App. 1996).

¶ 94. A defendant is typically not privy to the strategic decisions made by counsel. Accordingly, when a defendant makes a colorable claim for ineffective assistance of counsel, the circuit court should hold a *Machner* hearing.[3] The purpose of a *Machner* hearing is for the circuit court to gauge whether counsel's alleged deficiency was the result of strategy or oversight.

¶ 95. This determination often cannot be made without the testimony of counsel. Without counsel's testimony, a court cannot "focus on counsel's perspective" and "cannot otherwise determine whether . . . counsel's actions were the result of incompetence or deliberate trial strategies." *Foy,* 206 Wis. 2d at 640; *State v. Machner,* 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

¶ 96. As the majority acknowledges, "[a]n evidentiary hearing is nothing more than an intermediate step toward[s]" Balliette's objective, a new trial. Majority op.,

---

[3] *State v. Machner,* 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶ 61. "If the motion contained all the *proof* necessary to show that he was entitled to a new trial, he would not need an evidentiary hearing." *Id.* Hopefully, the majority opinion will not be read to contend that a defendant must supply all of the facts necessary to prevail in obtaining a new trial as a prerequisite to obtaining an evidentiary hearing.[4]

¶ 97.　Such a standard would render a *Machner* hearing an inconsequential formality. Further, it would

---

[4] To the, extent that the majority relies on federal habeas cases as authority for its new pleading requirements, I conclude that the majority errs.

The majority cites *Murray v. Carrier,* 477 U.S. 478 (1986) and *Smith v. Murray,* 477 U.S. 527 (1986). Majority op., ¶¶ 65–66. These cases address the cause and prejudice standards for procedural default, a central principle of seeking a writ of habeas corpus in a federal court. Before seeking federal habeas relief, a defendant must exhaust all state remedies. *Wainwright v. Sykes,* 433 U.S. 72 (1977). Federal courts will often decline to hear habeas challenges if the issue was not "resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Id.* at 87.

The procedural default standard is based in part on concerns for finality, a concern shared by state courts. However, as importantly, the procedural default standard is based on "the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Murray v. Carrier,* 477 U.S. at 487. "The principle of comity that underlies the exhaustion doctrine would be ill served by a rule that allowed a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation[.]" *Id.* at 489.

Borrowing from federal habeas standards to establish procedural rules for state claims would undermine a key rationale underlying the federal cause and prejudice standard—that constitutional questions arising out of state criminal proceedings should be resolved, when possible, in state courts.

be inconsistent with Wis. Stat. § 974.06, which provides: "Unless the motion and the files and records of the action conclusively show that the person is entitled to no relief, the court shall: . . . (c) Grant a prompt hearing." Finally, such a standard is untenable because it may bar meritorious claims whenever the defendant is unable to secure the cooperation of trial or postconviction counsel.

## III

¶ 98. When I examine Balliette's 16–page motion, I conclude that he set forth sufficient facts to entitle him to an evidentiary hearing. Among other claims, Balliette asserts that his trial counsel was ineffective for failing to present the testimony of an accident reconstruction expert, and that his postconviction counsel was ineffective for failing to challenge that omission on direct appeal.

¶ 99. The following facts and legal arguments are derived from the motion. At trial, Balliette testified that the accident resulted not from his intoxication or lack of care, but rather, from Thein's operation of her own vehicle. He testified that Thein slowed down and pulled over toward the right side of the road. As Balliette was about to pass Thein, she abruptly braked and turned left in front of his truck. Balliette testified that he slammed on the brakes but was unable to stop his truck before impact.[5]

¶ 100. Relying in part on the assumption that Thein's car did not have anti-lock brakes, an accident

---

[5] Wisconsin Stat. § 940.09(2)(a) provides that a defendant has an absolute defense to homicide by intoxicated use if the jury determines by the preponderance of the evidence that the death would have occurred even if the defendant had been exercising due care and not under the influence of an intoxicant. Wis. Stat. § 940.09(2)(a).

reconstruction expert testifying for the State opined that Balliette's version of the accident was "not possible," that it "can't physically happen," and it could not be reconciled with "the laws of physics." The expert testified: "[Balliette's version is] not possible on any day of the week or any year. It can't physically happen. We have to have the laws of physics. They don't change."

¶ 101. Balliette's trial counsel hired an expert, but he rested the defense without presenting any expert testimony. As a result, the jury was left to determine which of two versions of events was more credible—the unsupported testimony of the defendant, who was intoxicated at the time of the accident and clearly had a personal interest in the outcome of the trial, or the testimony of the State's reconstruction expert, who said that the defendant's version of events was "not possible on any day of the week or any year." Not surprisingly, the jury appears to have believed the State's expert.

¶ 102. After his conviction, Balliette hired his own accident reconstruction expert, who uncovered evidence undermining the expert opinion offered by the State. Among other revelations, Balliette's expert determined that Thein's car did in fact have anti-lock brakes.

¶ 103. In his motion for postconviction relief, Balliette asserted: "The fact that [Thein's car] had anti-lock brakes discredits the trial testimony of [the State's experts], which had impeached Balliette's testimony regarding Thein's actions moments before the collision, and renders their accident reconstructions flawed."

¶ 104. Balliette further asserted that his trial attorney's failure to present an accident reconstruction expert was deficient performance. He contended that his trial attorney "knew months before trial that he could not rely on the State's witnesses to present Balliette's theory of defense, and that without present-

ing [his] own accident reconstruction expert, Balliette would be left to rely solely on his own testimony to support his defense."

¶ 105. Balliette contended that had his trial attorney presented the testimony of an accident reconstruction expert, that testimony "would have given the jury a facts-based reconstruction of the events prior to the collision that would have countered the explanation given by the State." He asserted that this alternative testimony "would have given the jury the means to form a reasonable doubt as to Balliette's guilt." Accordingly, had trial counsel presented the testimony of an accident reconstruction expert, the jury would not have been presented with uncontroverted expert testimony that Balliette's version of events was contrary to "the laws of physics."

¶ 106. Because no *Machner* hearing was conducted regarding the claims that Balliette now raises, I do not know why Balliette's attorney declined to present the testimony of a reconstruction expert. Neither does the majority. It might be that the trial attorney made a reasonable strategic choice, or it may be that Balliette's trial attorney was asleep at the switch. Likewise, without the benefit of a *Machner* hearing regarding these claims, no member of this court knows why Balliette's postconviction attorney failed to raise the trial attorney's failure to present an accident reconstruction expert.

¶ 107. If the facts asserted in Balliette's motion are true, however, it is difficult to imagine that his trial attorney had a sound strategic reason for failing to counter the State's accident reconstruction expert. Rather, it is more likely that his trial attorney failed to conduct a reasonable investigation and uncover the flaw in the expert opinion offered by the State-that it was based on the erroneous conclusion that Thein's car did not have anti-lock brakes.

¶ 108. It is likewise difficult to have confidence that the jury would have reached the same verdict if the flaws in the expert opinion offered by the State had been exposed. If the facts asserted in Balliette's motion are true, a court may conclude that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

¶ 109. Finally, if the facts Balliette asserts are true, then it is difficult to imagine that his postconviction counsel made a sound strategic decision to forego this claim of ineffective assistance of counsel on appeal. Like the court of appeals, I conclude without reservation that Balliette's 16–page motion is sufficient to overcome the *Escalona-Naranjo* bar and entitle him to a *Machner* hearing where his claims can be tested. Accordingly, I respectfully dissent.

¶ 110. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.