# COURT OF APPEALS
## DECISION
## DATED AND FILED

## February 8, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2020AP57-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF474

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

DANIEL JOEL ADAMS,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County: JOHN ZAKOWSKI, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Daniel Adams appeals from a judgment convicting him of multiple felony drug charges and from an order denying his postconviction

motion for resentencing. Adams claims the State failed to disclose evidence to him, the circuit court sentenced him on inaccurate information, and his trial counsel provided ineffective assistance. We reject these claims and affirm.

## BACKGROUND

¶2 The charges arose from a months-long investigation of a drug trafficking organization that was distributing large amounts of methamphetamine, marijuana, and other controlled substances in Brown County. Through a combination of information from confidential informants, controlled drug buys, surveillance, wiretaps, telephone records, and search warrants, the Brown County Drug Task Force obtained substantial evidence that Adams was highly involved as a distributor in the organization's drug trafficking operation.

¶3 Adams eventually negotiated a plea agreement pursuant to which he pled no contest to: conspiracy to deliver more than 50 grams of methamphetamine; conspiracy to deliver more than 10,000 grams of THC; solicitation of delivery of more than 50 grams of methamphetamine; delivery of more than 200 but not more than 1,000 grams of THC; solicitation of delivery of more than 5 but not more than 15 grams of cocaine; and two counts of possession with intent to deliver more than 10 but not more than 50 grams of methamphetamine. Six other felony counts were dismissed and read in.

¶4 At sentencing, a task force investigator testified about the scope of the drug trafficking organization and Adams' involvement in it, including Adams' frequent interactions with the organization's leader, Bill Yang. At issue on this appeal, the State also presented the testimony of a co-defendant, Scott Pardee, who claimed that he had never used methamphetamine until Adams got him addicted to it by urging him to try it for free. The circuit court cited Pardee's testimony as an

example of the harm that Adams had caused when the court ultimately sentenced Adams to sixteen years' initial confinement followed by sixteen years' extended supervision.

¶5    Adams filed a postconviction motion alleging that the State had withheld impeachment evidence about consideration offered to Pardee and that Pardee had perjured himself in multiple respects, thus presenting the circuit court with inaccurate sentencing information. Adams further claimed that his trial counsel provided ineffective assistance by failing to adequately impeach Pardee. In denying Adams' motion, the court concluded that the State did not fail to disclose any agreement with Pardee, that the court did not actually rely on any of the allegedly inaccurate information, and that counsel's performance was not deficient.

## DISCUSSION

### 1. Disclosure of Impeachment Evidence

¶6    Adams first claims that the State violated his due process rights by failing to disclose consideration it had offered to Pardee. Specifically, on September 2, 2016, Pardee gave a statement to law enforcement as part of a proffer agreement for his testimony at Adams' sentencing. On October 6, 2016, Pardee's attorney obtained an adjournment of Pardee's sentencing date after informing the circuit court that the defense "would expect" that Pardee's cooperation would change his offer from the State. At a status conference on November 4, 2016, Pardee's counsel requested that Pardee's sentencing not be scheduled until after Adams' sentencing and informed the court that he was hoping to get something approaching a joint sentencing recommendation with the State. Then, on December 13, 2016, after Pardee had testified at Adams'

sentencing, the State agreed to recommend that Pardee's bail be reduced to a signature bond.

¶7     The prosecution is required to turn over "evidence favorable to an accused upon request … where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution." **Brady v. Maryland**, 373 U.S. 83, 87 (1963).  To establish a **Brady** violation, a defendant must show that:  (1) the State suppressed evidence within its possession at the time of trial or sentencing; (2) the evidence was favorable to the defendant; and (3) the evidence was material to a determination of the defendant's guilt or punishment. **State v. Wayerski**, 2019 WI 11, ¶35, 385 Wis. 2d 344, 922 N.W.2d 468.  Evidence is material when there is a reasonable probability that its disclosure would have led to a different result in the proceeding.  **State v. Garrity**, 161 Wis. 2d 842, 850, 469 N.W.2d 219 (Ct. App. 1991).  This court accepts the circuit court's findings of historical fact unless they are clearly erroneous, but we independently determine whether those facts establish a due process violation.  **Wayerski**, 385 Wis. 2d 355, ¶35.

¶8     Evidence that a witness agreed to testify while facing pending charges is relevant for impeachment purposes, even absent any formal cooperation agreement.  **State v. Barreau**, 2002 WI App 198, ¶¶55-56, 257 Wis. 2d 203, 651 N.W.2d 12.  A criminal defendant's subjective expectation of benefits from cooperating with the State may be damaging to credibility without any specific promises having been made.  **State v. Delgado**, 194 Wis. 2d 737, 751, 535 N.W.2d 450 (Ct. App. 1995).  Indeed, the lack of specific benefits having been negotiated may increase the incentive for a witness to shape testimony in a way that pleases the State.  **State v. Bagley**, 473 U.S. 667, 683-84 (1985).

4

¶9    Here, Adams acknowledges that the State did not make any specific promises to Pardee in exchange for his testimony. He contends that the State was nonetheless required to disclose "any inducements or expectations of benefits based on discussions with agents of the State," as evidenced by the delay of Pardee's sentencing and the reduction of his bail.

¶10    However, neither the existence of pending charges against Pardee, nor the fact that Pardee's sentencing hearing would be held after that of Adams', were facts "suppressed" by the State. Rather, both were matters of public record that were openly acknowledged by the State. In addition, the State disclosed the terms of a proffer agreement addressing potential areas for consideration, which could include "charges dropped, or lessened, or recommendation on sentence." Similarly, whatever subjective hopes Pardee may have had for leniency based upon his cooperation was not evidence within the State's "possession." The State had no duty to discern, much less disclose, Pardee's mental expectations. In addition, the State could not disclose the reduction of Pardee's bond before the State requested it and it had occurred, where no promise of such a reduction had been made in advance. In sum, while Adams' defense counsel was certainly free to question Pardee about his motivations for testifying at Adams' sentencing and about Pardee's possible hope for consideration at his own sentencing, Adams has not shown that the State withheld any evidence of specific negotiations or promises relevant to that line of questioning.

**2. Sentencing Information**

¶11    Adams next contends that he was sentenced based upon inaccurate information. The allegedly inaccurate information was: (1) Pardee's testimony denying he had any expectation of benefits for his cooperation; (2) Pardee's

testimony denying he was still angry at Adams by the time he gave his statement; (3) Pardee's denials of prior methamphetamine use and his description of his initial meeting with Adams; (4) Pardee's denials of his recent use of cocaine and pills; (5) Pardee's statement to police that Adams had been dealing drugs for about two and one-half years; and (6) an inaccurate inference drawn by the circuit court that Adams had never been threatened in order to gain his cooperation in the drug trafficking organization.

¶12    "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1.  If a defendant can establish by clear and convincing evidence both that inaccurate information was presented at sentencing and that the court relied upon the misinformation in reaching its determination, the burden shifts to the State to show that the error was harmless. *Id.*, ¶26.  A defendant who has been sentenced on inaccurate information that cannot be shown to be harmless is entitled to resentencing.  *State v. Payette*, 2008 WI App 106, ¶¶45-47 313 Wis. 2d 39, 756 N.W.2d 423.

¶13    This court will independently review a due process claim that a defendant has been sentenced based upon inaccurate information.  *Tiepelman*, 291 Wis. 2d 179, ¶9.  We will defer, however, to any credibility determination or factual findings underlying the circuit court's decision on a constitutional issue. *See Johnson v. Merta*, 95 Wis. 2d 141, 151-52, 289 N.W.2d 813 (1980) (circuit court is the "ultimate arbiter" for credibility determinations); *see also State v. Tullberg*, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120 (factual findings will be upheld unless clearly erroneous).

6

¶14    Here, Adams' allegations of inaccurate information all involve factual disputes, largely between Pardee's accounts of various matters and Adams' own accounts. We do not deem information to be "inaccurate," however, merely because it was contested or incomplete. Rather, the defendant must demonstrate the information was "extensively and materially false." *State v. Travis*, 2013 WI 38, ¶18, 347 Wis. 2d 142, 832 N.W.2d 491. In addition, actual reliance requires a showing that the court gave explicit attention or consideration to the information, such that it "formed part of the basis for the sentence." *Tiepelman*, 291 Wis. 2d 179, ¶14 (citation omitted). We conclude that Adams has failed to demonstrate that Pardee's testimony was both "extensively and materially false" and actually relied upon by the circuit court.

¶15    First, the circuit court explicitly determined Pardee to be more credible than Adams. In particular, the court found Pardee's testimony to be credible with respect to showing the "the debilitating effects of meth addiction," even if there were "slight difference[s]" in his testimony on other points. As noted above, we defer to such credibility determinations. Given the court's explicit determination that Pardee's testimony was largely credible as to Adams' role in getting Pardee addicted to methamphetamine, and the court's implicit determination that Pardee's testimony was imprecise or mistaken only with respect to small, nonmaterial matters, we have no basis to conclude that Pardee's testimony constituted constitutionally inaccurate sentencing information.

¶16    Second, the circuit court noted that Adams had "greatly over-inflated the significance of the Pardee testimony." The court explained that, in determining Adams' sentence, the court relied less upon Adams' interactions with Pardee, and more upon Adams' extensive interactions with Bill Yang, who was at the top of the chart for the drug trafficking organization. We therefore conclude

that the court did not actually rely upon the information alleged to have been inaccurate.

### 3. Assistance of Counsel

¶17    Finally, Adams contends that his trial counsel provided ineffective assistance by failing to investigate Pardee or to challenge his testimony.  To establish a claim of ineffective assistance, a defendant must prove two elements: (1) deficient performance by counsel; and (2) prejudice resulting from that deficient performance.  *State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89.  We will not set aside the circuit court's factual findings about what actions counsel took or the reasons for them unless they are clearly erroneous.  *See State v. Balliette*, 2011 WI 79, ¶19, 336 Wis. 2d 358, 805 N.W.2d 334.  However, whether counsel's conduct violated the constitutional standard for effective assistance is ultimately a legal determination that this court decides de novo.  *See id.*  We need not address both elements of the test if the defendant fails to make a sufficient showing on one of them.  *State v. Swinson*, 2003 WI App 45, ¶58, 261 Wis. 2d 633, 660 N.W.2d 12.

¶18    As an initial matter, we agree with the circuit court's observation that, based in part on Adams' counsel's examination of Pardee, the court was aware of Pardee's history as a bad actor in criminal circles.  Furthermore, we have already determined that the court did not rely on Pardee's testimony that Adams alleges to have been false or inaccurate.  It follows that Adams cannot demonstrate prejudice from his trial counsel's failure to more thoroughly impeach Pardee.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).