# COURT OF APPEALS
## DECISION
## DATED AND FILED

## February 12, 2020

Sheila T. Reiff
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP1520**

Cir. Ct. No. 2018TP1

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO C. P.-D.,
A PERSON UNDER THE AGE OF 18:

IRON COUNTY DEPARTMENT OF HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

N. H.-D.,

   RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Iron County: KEVIN G. KLEIN, Judge. *Affirmed*.

¶1 HRUZ, J.[1] Natalie appeals a circuit court order involuntarily terminating her parental rights to her son, Charlie.[2] She asserts her due process rights were violated during the grounds phase of her termination of parental rights (TPR) proceedings. Natalie also appeals, at least in part, the denial of her postdispositional motion in which she alleged her trial counsel provided ineffective assistance during the jury trial in the grounds phase. We affirm.

## BACKGROUND

¶2 Charlie was born on October 6, 2009. In February 2016, the circuit court found him to be a Child in Need of Protection or Services (CHIPS) under WIS. STAT. § 48.13(10), and he was placed outside of Natalie's home.

¶3 In March 2018, the Iron County Department of Human Services (the Department) petitioned to terminate involuntarily Natalie's parental rights. The Department later filed an amended TPR petition, alleging two grounds for termination: (1) continuing need of protection or services (known as "continuing CHIPS"[3]); and (2) failure to assume parental responsibility. *See* WIS. STAT. § 48.415(2), (6).

¶4 Natalie contested the TPR petition and requested a jury trial. After a three-day trial in July 2018, the jury found that both of the alleged grounds to terminate Natalie's parental rights existed, and the circuit court therefore found

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] For ease of reading, we refer to N.H.-D. and her son, C.P.-D., using pseudonyms, rather than their initials.

[3] *See St. Croix Cty. DHS v. Michael D.*, 2016 WI 35, ¶1, 368 Wis. 2d 170, 880 N.W.2d 107.

Natalie to be an unfit parent. Following a dispositional hearing, the court concluded that the termination of Natalie's parental rights was in Charlie's best interests, and it terminated her parental rights. Natalie appealed.

¶5     On September 9, 2019, Natalie, by new counsel appointed for her appeal, moved this court under WIS. STAT. RULE 809.107(6)(am) to remand the matter for a postdispositional hearing. Natalie alleged that she was entitled to a new trial because she had been denied the effective assistance of trial counsel for a variety of reasons. On September 16, 2019, we granted her motion to remand.

¶6     The circuit court then held a ***Machner***[4] hearing on Natalie's motion. Samuel Filippo, Natalie's trial counsel, testified. Following his testimony, the court denied Natalie's motion. It concluded that Filippo did not perform deficiently at the grounds trial and, even if he did, his alleged errors did not prejudice Natalie. Natalie now appeals, and additional facts are provided as necessary below.

## DISCUSSION

¶7     Natalie purports to raise four issues on appeal. Her first three arguments assert that her "due process rights" were violated in various ways throughout the grounds phase trial. Natalie then raises a specific claim of ineffective assistance on the part of her trial counsel. We address first Natalie's claimed due process arguments.

---

[4] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

*I. Due Process Violations*

¶8      Natalie argues that her due process rights were violated during the grounds trial for three reasons:  (1) evidence predating Charlie's birth was admitted to help prove the two TPR grounds; (2) evidence was introduced that was relevant to the dispositional phase, not the grounds phase; and (3) the guardian ad litem (GAL) made statements during closing arguments that "impermissibly invited the jury" to consider Charlie's best interests.[5]  Natalie's arguments, however, are both procedurally and substantively flawed.

¶9      Procedurally, Natalie forfeited her "due process" arguments for our review on appeal.  As relevant here, forfeiture is the failure to timely assert an objection to an alleged error.  *See State v. Ndina*, 2009 WI 21, ¶¶29-30, 315 Wis. 2d 653, 761 N.W.2d 612.  The purpose of the forfeiture rule "is to enable the circuit court to avoid or correct any error with minimal disruption of the judicial process, eliminating the need for appeal."  *Id.*, ¶30.

> The forfeiture rule also gives both parties and the circuit court notice of the issue and a fair opportunity to address the objection; encourages attorneys to diligently prepare for and conduct trials; and prevents attorneys from "sandbagging" opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal.

*Id.*

¶10      Because the forfeiture rule is one of judicial administration, a court may chose to ignore forfeiture and reach the merits of a claim.  *State v. Coffee*, 2020

---

[5] During the grounds phase of TPR proceedings, "the parent's rights are paramount." *Sheboygan Cty. DHHS v. Julie A.B.*, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402. Conversely, during the dispositional phase of TPR proceedings, the focus shifts to the child's best interests. *Id.*, ¶28.

WI 1, ¶21, ___ Wis. 2d ___, ___ N.W.2d ___. Furthermore, if a court decides that a party has forfeited a claim in a case where the party has a constitutional right to an attorney and one has been appointed, the normal procedure is to address that claim within the rubric of ineffective assistance of counsel. *See id.*, ¶22; *A.S. v. State*, 168 Wis. 2d 995, 1005, 485 N.W.2d 52 (1992) (extending claims of ineffective assistance of counsel to TPR proceedings).

¶11 Natalie plainly forfeited her three "due process" arguments because she did not object at trial when any of the alleged errors occurred—much less object on grounds of a due process violation. Furthermore, the errors Natalie alleges do not involve those fundamental constitutional rights that cannot be forfeited but, rather, must be intentionally waived. *See Coffee*, 2020 WI 1, ¶20 (explaining that these rights include the rights to counsel, to refrain from self-incrimination, and to a jury trial). As we explain in more detail immediately below, the "due process" arguments she raises do not—at least in the way she develops them—implicate any discernible due process rights.

¶12 Substantively, Natalie's due process arguments are undeveloped. She does not explain how the unobjected-to admission of the two sets of evidence and the remarks at closing arguments amounted to a due process violation.

¶13 We also cannot discern whether Natalie is claiming a procedural or substantive due process violation. Indeed, she never ties any of her arguments to any standard for establishing a violation of due process. Her procedural due process rights were afforded, insomuch as she had notice and a right to be heard, *see Steven V. v. Kelley H.*, 2004 WI 47, ¶¶23, 44, 271 Wis. 2d 1, 678 N.W.2d 856, and she exercised the latter right by demanding and receiving a jury trial. Further, if Natalie is contending that one of her substantive due process rights was violated,

nowhere does she identify exactly which of her constitutionally protected rights was infringed upon. We need not address undeveloped arguments. *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). Thus, even if we chose not to apply the forfeiture rule, we would nonetheless decline to address Natalie's arguments because they are undeveloped.

¶14     Still, and in the interest of thoroughness given that Natalie's parental rights are at stake, we could address the alleged errors Natalie raises as implicating her trial counsel's inaction and lack of objection on evidentiary matters and during closing arguments. Again, when a party forfeits its alleged errors because they do not involve certain fundamental constitutional rights, the proper framework for us to address these issues is within the rubric of ineffective assistance of counsel. *See Coffee*, 2020 WI 1, ¶22. Nonetheless, we note that Natalie makes no developed ineffective assistance of counsel argument related to the three errors she alleges.[6]

¶15     Natalie apparently understands this rule regarding unobjected-to errors as a general matter because, as discussed below, she does raise on appeal one ineffective assistance of counsel claim. Notably, in the postdispositional proceedings in the circuit court, Natalie's arguments regarding the allegedly improper admission of evidence predating Charlie's birth and evidence relevant to the dispositional phase were both made in the context of alleging her counsel was constitutionally ineffective in failing to object to these errors. Yet, she neither claims nor argues ineffective assistance of counsel in relation to her three alleged "due process" violations on appeal.

---

[6] As we have previously noted, Natalie raises only one claim of ineffective assistance of counsel. The grounds underlying that claim are neither identical nor argued in the alternative to the merits of her three "due process" arguments.

¶16 In all, Natalie's failure to explain either how her procedural due process rights were violated or which of her substantive due process rights was violated, as well as her decision not to advance her arguments under the rubric of ineffective assistance of counsel, prevent our review of her first three arguments. We therefore do not, and frankly cannot, address their merits.

## II. Ineffective Assistance of Counsel

¶17 Natalie next argues that Filippo, her trial counsel, performed deficiently during the grounds trial. Specifically, she contends the Department and GAL improperly attacked her character "pervasively" throughout the trial, and Filippo's failure to object to any of those attacks constituted deficient performance that prejudiced her defense. Whether Filippo was ineffective is a mixed question of fact and law. *See State v. Balliette*, 2011 WI 79, ¶19, 336 Wis. 2d 358, 805 N.W.2d 334. The circuit court's findings of fact will not be disturbed unless they are clearly erroneous. *Id.* The ultimate conclusion of whether Filippo provided ineffective assistance, however, is a question of law that we review independently. *See id.*

¶18 A respondent in TPR proceedings has the constitutional right to the effective assistance of counsel. *See A.S.*, 168 Wis. 2d at 1005. Accordingly, we follow the same *Strickland v. Washington*, 466 U.S. 668 (1984), framework that is used in criminal cases. *A.S.*, 168 Wis. 2d at 1005. To establish ineffective assistance, a respondent must prove two elements: (1) counsel's performance was deficient; and (2) that deficient performance prejudiced the respondent. *See State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89. "[T]he law affords counsel the benefit of the doubt; there is a presumption that counsel is effective unless shown otherwise …." *Balliette*, 336 Wis. 2d 358, ¶27. Additionally, counsel's decisions in choosing a trial strategy are to be given "great deference"—

that is to say, a court "must be vigilant against the skewed perspective that may result from hindsight, and it may not second-guess counsel's performance solely because the defense proved unsuccessful." *Id.*, ¶¶25-26.

¶19    Here, the continuing CHIPS ground required the Department to prove at trial that there was a substantial likelihood Natalie would not meet the conditions for Charlie's return as specified in his CHIPS order.    *See* WIS. STAT. § 48.415(2)(a)3.    Those conditions of return included that Natalie obtain safe and stable housing, participate in a variety of programming, and cooperate with a social worker.    They also required Natalie to learn about Charlie's behavioral and mental health needs, and to create a plan to address those needs.

¶20    As best we can discern, Natalie contends that the Department and GAL improperly elicited testimony by asking "character impugning questions to which [Filippo] did not object."    She seems to argue that the elicited testimony was inadmissible character evidence under WIS. STAT. § 904.04, but she does so with only a passing reference to that statute.

¶21    Natalie provides nineteen examples of questions that she alleges were "character impugning" and designed to make "the jury judge" if she had become a "better" parent.    In Natalie's view, the Department's and GAL's asking witnesses to opine on whether Natalie had become "better" in a variety of ways misled the jury on its assessment of whether she could meet the conditions for Charlie's return. Without reference to case law citable for precedential value, Natalie argues the continuing CHIPS ground's elements "should be judged by an objective standard," and, therefore, the "character impugning questions" the Department and GAL asked

impermissibly changed the jury's inquiry into a "subjective assessment."[7]  We understand Natalie to argue that this shift from an "objective assessment" to a "subjective assessment" impermissibly lowered the Department's burden of proof to some standard below "clear and convincing evidence."  *See Steven V.*, 271 Wis. 2d 1, ¶23.  Ultimately, Natalie asserts Filippo was complicit in the jury being misled because he failed to object during the Department's and GAL's questioning, making his performance deficient.

¶22     Natalie's argument that Filippo performed deficiently lacks merit.  The examples to which Natalie cites take the Department's and GAL's questions out of context.  The questions at issue elicited responses on the issue of whether there was a substantial likelihood that Natalie could comply with Charlie's conditions of return.  For example, the conditions involved issues of whether Natalie was able to consider the needs of her children (which, in Charlie's case, included certain mental health and behavioral needs) and to design a plan to address those needs.  Natalie's "history of parental conduct may be relevant to predicting [her] chances of complying with conditions in the future, despite failing to do so to date." *See La Crosse Cty. DHS v. Tara P.*, 2002 WI App 84, ¶13, 252 Wis. 2d 179, 643 N.W.2d 194.  Accordingly, a jury "must necessarily consider the parent's relevant character traits and patterns of behavior, and the likelihood that any problematic traits or propensities have been or can be modified in order to assure the safety of

---

[7]  Natalie primarily cites to only one case in support of her ineffective assistance of counsel claim—*State v. Patricia Marie F-K.*, No. 1999AP206, unpublished slip op. (WI App Apr. 6, 1999). That case, however, may not be cited for precedential value because it is an unpublished authored opinion issued before July 1, 2009.  *See* WIS. STAT. RULE 809.23(3)(b).  Accordingly, we will not consider it.  We admonish Natalie's appellate counsel that violations of the rules of appellate procedure may result in sanctions.

the children." *Id.*, ¶18. The questions of which Natalie complains were clearly related to these proper inquiries.

¶23 Furthermore, the circuit court found that the Department and the GAL did not act pejoratively toward Natalie during trial, as she now claims. The court found that there was not an "onslaught or barrage o[f] inappropriate questions," and "in terms of the demeanor or context in the courtroom, there was nothing inappropriate." Natalie makes no discernible argument that the court's findings in this regard, which are informed by its oversight of the trial, are clearly erroneous. We therefore are not at liberty to disregard them. *See* WIS. STAT. § 805.17(2). In short, Filippo cannot have performed deficiently because raising meritless objections does not constitute deficient performance. *See State v. Swinson*, 2003 WI App 45, ¶59, 261 Wis. 2d 633, 660 N.W.2d 12.

¶24 Additionally, Filippo testified he made strategic decisions not to object. At multiple times throughout the *Machner* hearing, Filippo explained he chose not to object to the Department's and GAL's questions because: (1) he did not want to risk the circuit court overruling his objection in front of the jury; and (2) he wanted to "keep[ his] powder dry for an objection that might … be more likely sustained." Filippo reasoned that some of the lines of inquiry were related to evidence that the court had previously found admissible when it denied, pretrial, Natalie's motion in limine. Filippo's decisions not to object were strategic, and reasonably so, and we consequently afford them great deference. *See Balliete*, 336 Wis. 2d 358, ¶27. Given the circumstances, Fillipo's decision not to object cannot constitute deficient performance.

¶25 We also agree with the Department and the GAL that even assuming Filippo performed deficiently, Natalie cannot show prejudice. To establish

10

prejudice, Natalie must establish that Filippo's errors were "unreasonable" and that they "*actually* had an adverse effect on the defense." ***Id.***, ¶24. Ultimately, we evaluate whether there is a "reasonable probability" that, absent Filippo's errors, the result of the grounds trial would have been different such that the jury would have concluded that the TPR grounds the Department petitioned for did not exist. *See **Sholar***, 381 Wis. 2d 560, ¶33.

¶26 Here, any import the jury gave to the allegedly objectionable questions and answers was minimal within the overall context of the trial, and the amount of other evidence used to prove up the grounds for TPR was substantial. As the circuit court noted, the allegedly objectionable information had been "sprinkled throughout" the three-day trial and was "in number … not significant." Even assuming that errors occurred, they did not render the grounds trial "unfair and unreliable." *See **id.*** In all, Filippo provided effective assistance at Natalie's TPR proceedings.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.