COURT OF APPEALS
DECISION
DATED AND FILED

November 19, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP1765-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2016CF927**

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JOSHUA S. GEHDE,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dane County:  STEPHEN E. EHLKE, Judge.  *Affirmed*.

Before Kloppenburg, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Joshua Gehde appeals a judgment of conviction for first-degree reckless homicide and an order denying his post-conviction motion. Gehde argues that his two trial attorneys were ineffective by failing to present a consistent defense. He asserts that one of his attorneys presented arguments in opening statements and cross-examination of the State's lay witnesses that conflicted and were inconsistent with the evidence presented by his other attorney through testimony by the defense expert witnesses. For the reasons explained below, we conclude that Gehde's trial counsel were not ineffective. We affirm.

¶2 Gehde was charged with first-degree reckless homicide based on the death of two-year old S.K.H., who was the daughter of Gehde's girlfriend. Gehde was represented by two attorneys at trial. One of Gehde's attorneys gave the opening statement and argued that the evidence would show the following. On the day of the incident that led to S.K.H.'s death, Gehde was watching S.K.H. while S.K.H.'s mother was at work. Gehde left S.K.H. in the living room watching television and eating crackers, while Gehde went into the bathroom to prepare for the day. When Gehde came out of the bathroom, he found S.K.H. on the floor, choking and not breathing. Gehde called S.K.H.'s mother, started trying to clear S.K.H.'s airway, and called 9-1-1. Emergency responders found S.K.H. on the floor, with what appeared to be regurgitated crackers nearby. Medical personnel used forceps to remove vomit that was blocking S.K.H.'s airway, but S.K.H. was still not breathing. Police reported that there was nothing to indicate criminal activity at the scene and believed that it had been a "tragic accident."

¶3 Counsel also argued that the medical evidence would show the following. S.K.H. had a virus and "several other things going on." S.K.H. was "not breathing for a long period of time, oxygen is not getting to her brain, her heart stopped beating, creates … hypoxia … which creates a chemical condition in the

brain called metabolic acidosis," which in turn led to brain swelling. S.K.H. did not have any skull fractures caused by external injury or any injury to her gray and white brain matter that would have explained why she stopped breathing. The absence of any evidence of brain injury meant that a brain injury was not the mechanism that had caused S.K.H.'s brain to shut down, and that instead, it was choking that had caused her brain to shut down. Additionally, S.K.H.'s MRI at the hospital revealed blood clots and a neurosurgeon at the hospital had recommended that S.K.H. be assessed for a stroke. Moreover, testing of S.K.H.'s blood at the hospital indicated blood clotting abnormalities, but the hospital failed to test for a genetic blood disorder despite an indication for that testing, and a genetic blood disorder could have meant that S.K.H. had a predisposition to clotting and that even minor bumps could have caused blood clots.

¶4    Counsel argued that the investigators had a "tunnel vision" focused on child abuse, seeing only "part of the picture" rather than the "whole thing." He finished his opening statement by arguing that Gehde had not harmed S.K.H., and that the evidence would show that Gehde found S.K.H. choking; that material was removed from S.K.H.'s airway that was consistent with choking; that S.K.H. had blood clots; and that if the jury looked at everything, it would see that Gehde was not guilty.

¶5    Gehde's first attorney also questioned the State's lay witnesses as to evidence that S.K.H. had choked on crackers. He elicited testimony from emergency responders that vomit had been removed from S.K.H.'s mouth, that crackers and vomit were found near S.K.H. on the floor, and that S.K.H. had difficulty breathing and her lips were blue.

¶6    Gehde's second attorney presented the defense medical evidence. The first defense expert testified that S.K.H.'s manner of death was "probably … a natural death," that is, "a disease process that took place over time." The expert described clots in S.K.H.'s sinus, and opined that S.K.H. had a stroke. He also opined that S.K.H. may have had a genetic blood disorder that caused her to form blood clots more easily. He testified that S.K.H. had a choking episode that prevented oxygen from getting to her brain. He ended his direct testimony by reiterating that he believed S.K.H. died of a stroke. He explained that S.K.H. had a cold virus that caused her to become dehydrated, and that the dehydration led to blood clots that led to brain swelling. He again stated that S.K.H.'s death was from a "natural disease process."

¶7    The second defense expert witness testified that S.K.H. died after suffering a stroke that led to a seizure and subsequently lack of oxygen and swelling of her brain. He testified that S.K.H. had developed blood clots in her brain, which irritated her brain and caused a seizure. He also testified that evidence that S.K.H. had choked and bitten her tongue was consistent with his conclusion that she had suffered a seizure.

¶8    The third defense expert witness testified that S.K.H. had died due to lack of oxygen to her heart and brain, which he believed was caused by a choking episode or a seizure caused by a blood clot in her brain. He also explained that a seizure could look like choking to a layperson.

¶9    Gehde filed a postconviction motion arguing that his trial counsel were ineffective by presenting conflicting and inconsistent defenses. He argued that his first attorney, through his opening statement and cross-examining the State's lay witnesses, pursued a defense that S.K.H. had died from choking on crackers, while

his second attorney, through the defense expert witnesses, had pursued a defense that S.K.H. had died from a stroke.

¶10 The circuit court held an evidentiary hearing on Gehde's postconviction motion. Both of Gehde's trial counsel testified at the postconviction motion hearing that they failed to properly communicate with each other as to the defense theory, and that they did not believe they effectively presented a consistent defense to the jury. The circuit court found that defense counsel were not deficient in their presentation of the defense at trial and also that any deficiency did not prejudice the defense, and denied the postconviction motion. Gehde appeals.

¶11 A defendant claiming ineffective assistance of counsel must establish that counsel's performance was both deficient and prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 687-694 (1984). Counsel's performance is deficient if it falls outside the wide range of professionally competent assistance. *Id.* at 690. If the defendant fails to establish deficient performance, we need not address prejudice. *Id.* at 697. We review the circuit court's factual findings as to an ineffective assistance of counsel claim under the clearly erroneous standard, but independently review whether those facts establish that counsel was ineffective. *State v. Carter*, 2010 WI 40, ¶19, 324 Wis. 2d 640, 782 N.W.2d 695.

¶12 Gehde argues that his trial counsel were ineffective by presenting inconsistent theories to the jury about the cause of S.K.H.'s death. Gehde argues that his first attorney presented a defense to the jury that S.K.H. had died because she choked on crackers, while his second attorney presented a defense to the jury that S.K.H. died because she had a stroke. He notes that the two defense theories had some overlap—with each attorney referencing both choking and blood clots—but contends that the two attorneys presented different and inconsistent theories as

to the cause of S.K.H.'s death.  Gehde contends that, from opening statements through the first five days of trial, his first attorney presented a defense that S.K.H. had died by choking on crackers.  He points out that his first attorney argued that choking was the mechanism that caused S.K.H.'s brain to shut down.  He asserts that, in the opening statement, counsel sprinkled in mentions of blood clots but provided no explanation as to the relevance of the blood clots or how the experts would connect the blood clots to S.K.H.'s death.  He contends that, suddenly, after the first full week of trial, his second attorney introduced a completely new theory: that S.K.H. had a pre-existing condition that caused her to form blood clots more easily and that she died of a stroke.  He argues that the defense expert witnesses completely undercut his opening statement, and that the defense lost all credibility as a result.  He cites his counsel's testimony at the postconviction motion hearing as establishing that the reason for the lack of consistency was counsel's failure to communicate and properly prepare for trial.

¶13     The State responds that Gehde's two defense attorneys presented a consistent theory of defense:  that S.K.H. died from a sequence of physical events, possibly stemming from blood clots, rather than inflicted trauma.  It points out that Gehde's counsel are presumed to have exercised reasonable professional judgment and made sound strategic decisions at trial.  *See* ***State v. Balliette***, 2011 WI 79, ¶¶25, 27, 336 Wis. 2d 358, 805 N.W.2d 334.  It argues that Gehde's first attorney correctly set forth in his opening statement that the evidence would show that S.K.H. was found choking, possibly due to blood clots, and that there was a lack of any external trauma to S.K.H. that would establish physical abuse.  It argues that the three defense experts were largely consistent with the defense opening statement because they opined that S.K.H. was found choking and that she had blood clots in her sinuses that may have caused a seizure and brain swelling.  The State also points

6

out that the circuit court was not required to accept Gehde's defense counsel's assertions at the postconviction motion hearing that they failed to adequately prepare for trial. *See **State v. Kimbrough***, 2001 WI App 138, ¶¶29, 35, 246 Wis. 2d 648, 630 N.W.2d 752 (the circuit court is entitled to accept or reject trial counsel's testimony at a postconviction motion hearing; counsel's testimony is considered along with other evidence in the record in deciding whether counsel's performance was deficient).

¶14     Professionally competent assistance encompasses a "wide range" of conduct, and a reviewing court starts with the presumption that counsel's assistance fell within that wide range. ***Strickland***, 466 U.S. at 689. Here, despite trial counsel's testimony at the postconviction motion hearing, our review of the trial transcripts establishes that counsel presented a consistent defense theory: that S.K.H. died from lack of oxygen to her brain caused by a series of physical reactions that were not caused by physical abuse.

¶15     Gehde's first attorney argued in opening statements that the evidence would show that Gehde found S.K.H. choking on crackers, and also that S.K.H. had "several other things going on," including a virus and blood clots. While counsel did not lay out in opening statements how the defense experts would specifically tie the blood clots to S.K.H.'s death, he informed the jury that the evidence would show that S.K.H.'s death was not caused by physical abuse. Gehde's first attorney also elicited testimony from State witnesses consistent with Gehde's report that he found S.K.H. choking on crackers. Gehde's second attorney presented expert medical testimony opining that S.K.H. may have had a genetic blood clotting disorder; that she had blood clots and a stroke that caused a seizure and brain swelling; that she had a choking episode; and that she died as a result of loss of oxygen to her brain. Gehde's second attorney also elicited testimony from the experts opining that

S.K.H.'s death was not caused by physical abuse. Thus, defense counsel did not pursue inconsistent theories; they both pursued the theory that Gehde did not harm S.K.H., but rather found her choking on crackers, and that the series of physical reactions that led to her death could be traced to blood clots, rather than physical abuse.

¶16 We conclude that Gehde has not met his burden to show that his defense counsel performed deficiently. *See* **Strickland**, 466 U.S. at 687, 690. Accordingly, we affirm the judgment of conviction and the order denying Gehde's postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).