COURT OF APPEALS
DECISION
DATED AND FILED

August 30, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP731-CR**

Cir. Ct. No. 2018CF2078

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TYRIN ELIJAH CARRAO,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MICHELLE ACKERMAN HAVAS, Judge. *Affirmed*.

Before Brash, C.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Tyrin Elijah Carrao appeals from a judgment of conviction and an order of the trial court denying his motion for postconviction relief without a hearing.  On appeal, Carrao raises several arguments.  He argues that there was insufficient evidence to support his convictions, that the jury was improperly instructed on the charge of attempted armed robbery as a party to a crime, that the amended information on which Carrao was tried added a new charge in violation of Carrao's constitutional rights, and that the trial court erroneously exercised its discretion in imposing Carrao's sentence.  For the reasons set forth below, we affirm.

## BACKGROUND

¶2     As alleged in the criminal complaints filed in this case, on January 15, 2018, Claire[1] reported to police that she was sitting in her vehicle in the parking lot of her workplace, when a silver Nissan backed into the space next to her and one of the Nissan's occupants emerged from the car, displayed a gun, and tried to demand her property.  Claire reported that she locked her car doors and drove away.  Later that same day, Elizabeth called the police to report that she was sitting in her vehicle in the driveway of a house in Wauwatosa, when a silver Nissan pulled into the driveway next to her and blocked the driver's side door of her car.  She further reported that one of the occupants of the Nissan emerged, displayed a gun, and demanded her phone, her purse, and her backpack.  An officer who responded to Elizabeth's call tracked the Nissan to a local business— Chuck's Smoke Shop—where Elizabeth's debit card was reportedly used.

---

[1]  For ease of reference and to protect the identity of the victims, we use pseudonyms to refer to the victims in this matter.

¶3      Following an investigation, the State charged Carrao and Johnny Allen Hopgood III with armed robbery and unauthorized use of personal identifying information, both as a party to a crime, as it related to the incident involving Elizabeth and the use of her card.[2]  The information that was initially filed contained the same charges related to the incident involving Elizabeth. Carrao was arraigned on these charges and entered pleas of not guilty.

¶4      After further investigation, the State filed an amended criminal complaint on February 1, 2019, additionally charging Carrao and Hopgood with the attempted armed robbery, as a party to a crime, for the incident involving Claire.  The State subsequently filed an amended information including the additional charge of attempted armed robbery as a party to a crime.  The case proceeded to trial on the amended information.

¶5      At trial, the State called Elizabeth, Claire, and the officers involved in the criminal investigations.  The State also offered video footage of the parking lot of Claire's workplace, as well as video footage from the local business at which Elizabeth's debit card was used shortly after it was taken from her.  Based on the evidence it presented, the State argued that Carrao drove the Nissan during both incidents and then drove that same Nissan to the local business at which Hopgood used Elizabeth's debit card and Carrao attempted to use the same card.

¶6      The jury returned guilty verdicts on Carrao's charges of armed robbery, unauthorized use of personal identifying information, and attempted

---

[2]  Carrao was alleged to have driven the Nissan, and Hopgood was alleged to have been a passenger in the Nissan.  An alleged third individual, the gunman, was never identified and was described to have been wearing a brown coat.

armed robbery, all as a party to a crime. However, the jury returned not guilty verdicts on Hopgood's two charges of armed robbery and attempted armed robbery.[3]

¶7　Carrao was ultimately sentenced to a total of thirteen years of imprisonment, composed of nine years of initial confinement and four years of extended supervision. Hopgood was sentenced to four years of imprisonment consecutive to any other sentence, composed of two years of initial confinement and two years of extended supervision.[4]

¶8　Carrao filed a motion for postconviction relief, and the trial court denied Carrao's motion, without a hearing. Carrao now appeals. We address each of Carrao's arguments in turn, and we include additional relevant facts as needed.

## DISCUSSION

### I.　Sufficiency of the Evidence

¶9　Carrao first argues that there is insufficient evidence to support his convictions, and all three of his convictions should be reversed and the charges dismissed. He argues that there is no evidence from which the jury, acting reasonably, could reach the inference that he was guilty beyond a reasonable

---

[3] Prior to trial, Hopgood pled guilty to the charge of unauthorized use of personal identifying information.

[4] Carrao provides that Hopgood's sentence is four years of imprisonment, composed of two years of initial confinement and two years of extended supervision. The State does not dispute Carrao's description. Moreover, a review of the CCAP record for Hopgood's case confirms Hopgood's sentence. *See Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522 (describing Wisconsin's CCAP (Consolidated Court Automation Programs) as an online website that contains information entered by court staff of which this court may take judicial notice).

doubt. We disagree, and we conclude that there is sufficient evidence for the jury, acting reasonably, to accept an inference of guilt on all of Carrao's charges.

## A. *Governing Legal Principles*

¶10 A challenge to the sufficiency of the evidence to support a criminal conviction is a question of law that we review *de novo*. **State v. Smith**, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. **State v. Poellinger** establishes the standards that we apply when reviewing the sufficiency of the evidence to support a conviction as follows:

> [We] may not substitute [our] judgment for that of the trier of fact unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*Id.*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990) (citations omitted). Additionally,

> [i]n reviewing the sufficiency of circumstantial evidence to support a conviction, [we] need not concern [ourselves] in any way with evidence which might support other theories of the crime. [We] need only decide whether the theory of guilt accepted by the trier of fact is supported by sufficient evidence to sustain the verdict rendered.

*Id.* at 507-08. Applying this standard of review, we conclude that there was sufficient evidence for the jury to have reasonably concluded that Carrao was guilty of the charged offenses.

### B. Attempted Armed Robbery of Claire

¶11     In support of his argument as to the charge involving Claire, Carrao directs our attention to the fact that Claire's description of the driver of the Nissan varies so greatly from his actual appearance that it "does not in any manner fit the description of the defendant." Carrao also highlights that Claire admitted to only being able to see the driver of the Nissan for a few seconds out of the rearview mirror of her car to support his argument that no jury acting reasonably could have found that Carrao was the driver of the Nissan, and thus guilty of this charge beyond a reasonable doubt.

¶12     As the trial court recognized, Carrao's argument requires this court to substitute its judgment for that of the jury. This we cannot do. While there may have been inconsistencies in Claire's testimony and in the description she gave of the suspect as compared to the defendant's actual appearance, any inconsistencies were for the jury to resolve. *See **Poellinger***, 153 Wis. 2d at 506 ("It is the function of the trier of fact, and not of an appellate court, to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.").

¶13     Moreover, Carrao's argument fails to consider the additional evidence from which the jury could have found Carrao was the driver of the Nissan, and thus a participant in the attempted armed robbery of Claire. In addition to Claire's testimony recounting the incident, the State also presented video footage from the parking lot of Claire's workplace. The footage shows a silver Nissan pulling into the parking space next to Claire, a person emerges from the Nissan, Claire's car drives away, and then the Nissan drives away. The time

stamp on this footage is 3:56 p.m., and the driver of the Nissan can roughly be seen wearing a dark hoodie with white strings.

¶14     Elizabeth then testified as to the individuals in a silver Nissan that approached her, and she placed that encounter at around 4:00 p.m.  As shown on a map introduced at trial, the location of Elizabeth's encounter with a silver Nissan was less than two miles away from Claire's workplace, with an estimated drive time of five minutes.

¶15     Then, around 4:13 p.m., just minutes after Elizabeth's encounter with a silver Nissan and its occupants, a silver Nissan matching the same description arrives at Chuck's Smoke Shop, approximately three miles away from Elizabeth's location and with an estimated drive time of ten minutes.[5]  Video footage from Chuck's Smoke Shop shows Carrao and Hopgood together and shows Hopgood successfully purchase cigarettes with Elizabeth's debit card.[6]  The video footage also shows a person wearing a red hoodie—with a black hood and white strings—driving the Nissan, and Carrao was clearly identifiable in the video footage from Chuck's Smoke Shop wearing a red hoodie with a black hood and

---

[5] The Nissan was further identified as the same vehicle as a result of a dent in the rear bumper, distinctive bumper stickers, and a hitch that are visible in the video footage from the parking lot of Claire's work and the parking lot of Chuck's Smoke Shop.  Police also recovered the Nissan during the investigation and found Elizabeth's ID and backpack inside.

[6] Elizabeth's debit card is not identifiable on the video footage.  However, bank records for Elizabeth's debit card registered a charge that corresponded to Hopgood's purchase.

white strings, consistent with the apparel that the driver of the silver Nissan in the footage from Claire's workplace and Chuck's Smoke Shop was seen wearing.[7]

¶16    In short, the evidence is sufficient to support an inference by the jury, acting reasonably, that Carrao, who was identified around 4:13 p.m. in a nearby business, wearing a red hoodie with a black hood and white strings and arriving in a silver Nissan, was the same person seen on video footage at 3:56 p.m. wearing a dark hoodie with white strings and driving the same silver Nissan that pulled into the parking lot of Claire's workplace. Consequently, there is sufficient evidence to support the jury's conviction of Carrao for the attempted armed robbery of Claire, as a party to a crime.

### C. Armed Robbery of Elizabeth

¶17    Turning to the charges involving Elizabeth, Carrao makes a similar argument that the evidence is insufficient to support the theory that he was the driver of the Nissan. In this regard, he argues that the description provided by Elizabeth is inconsistent with his actual appearance and, therefore, the jury could not reasonably infer that the suspect described by the victim was in fact Carrao. He further points to the fact that Elizabeth was unable to identify him in a photo lineup.

¶18    We are similarly unpersuaded by Carrao's argument in this regard because it again fails to recognize the jury's role in resolving inconsistencies and

---

[7] The video footage from Claire's workplace is less clear about what the driver of the Nissan is wearing. However, a dark hood and white strings are visible. Thus, the apparel of the driver in the video footage is consistent with the apparel Carrao is clearly seen wearing minutes later at Chuck's Smoke Shop.

fails to account for the additional evidence presented by the State apart from Elizabeth's own account of the armed robbery.

¶19 As described above, a silver Nissan was identified in the parking lot of Chuck's Smoke Shop just minutes away from where Elizabeth was robbed, being driven by a person wearing clothing consistent in appearance to what Carrao is clearly seen wearing in video footage inside the shop, namely the red hoodie with the black hood and white strings. Carrao and Hopgood are also clearly identifiable in the video footage from inside Chuck's Smoke Shop where Hopgood makes a purchase of cigarettes with Elizabeth's card and, after exchanging something with Hopgood, Carrao attempts to make a purchase. Furthermore, Elizabeth testified that she tracked her cell phone to this local business before her phone was turned off, and her bank records registered a transaction corresponding to Hopgood's purchase of cigarettes.

¶20 In all, the consistency of the appearance of the driver of the Nissan with Carrao's appearance inside the shop, the identity of the Nissan, and the location and timing of events are sufficient evidence to support a reasonable inference that Carrao drove the Nissan at the time of Elizabeth's robbery and thus, was guilty as to the armed robbery of Elizabeth, as a party to a crime. Consequently, there is sufficient evidence to support the jury's conviction of Carrao for the armed robbery of Elizabeth, as a party to a crime.

D. *Unauthorized Use of Elizabeth's Debit Card*

¶21 Finally, as to the unauthorized use of Elizabeth's debit card at the smoke shop, Carrao argues that there was no evidence whatsoever of this crime. He contends that neither the cashier nor the video footage establish that Carrao

used the debit card, but rather, it was Hopgood who used Elizabeth's debit card to buy cigarettes.

¶22    We reject Carrao's contention, and we observe that Carrao was charged with this crime as a party to a crime, which can be supported by intentionally aiding and abetting the commission of the crime. *See* WIS. STAT. § 939.05 (2019-20).[8]    A review of the record shows that there is sufficient evidence from which the jury could reasonably infer that Carrao aided and abetted Hopgood in using Elizabeth's debit card to purchase cigarettes.

¶23    While there are no bank records indicating that Carrao made a purchase using Elizabeth's debit card, there is a reasonable inference that Carrao attempted to use it and assisted Hopgood when he used it. As we have repeatedly described, the video footage from the local business shows Hopgood and Carrao together in the shop. It also shows Hopgood purchasing cigarettes with what bank records show was Elizabeth's debit card. It then shows that Hopgood and Carrao confer in the shop, exchange something, and then Carrao attempts to purchase chips. The cashier testified that Carrao did not succeed in making his purchase only because Carrao did not meet the required dollar amount for making a purchase using a debit or credit card. The video footage also shows that Carrao and Hopgood's departure from the shop coincides with footage of the silver Nissan driving away, with a driver wearing a dark hoodie with white strings.

¶24    From this evidence, the jury could reasonably infer that Carrao assisted in Hopgood's use of the card by driving the Nissan to the place where

---

[8] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

10

Elizabeth was robbed, and then driving the Nissan to the smoke shop where the intention was to make purchases with Elizabeth's card. Consequently, there is sufficient evidence to support the jury's conviction of Carrao for the unauthorized use of Elizabeth's debit card, as a party to a crime.

## II. Jury Instruction for Attempted Armed Robbery

¶25 Carrao next argues that the trial court erroneously instructed the jury on the charge of attempted armed robbery as a party to a crime and, as a result, he was denied a fair trial. Specifically, he argues that the instructions given were so confusing that they did not accurately state the law and the jury could not have understood how to apply the law to Carrao's case. The State, however, argues that Carrao forfeited his ability to challenge the jury instructions because no objection was made at the time of trial.

¶26 We agree with the State. No objection to the jury instructions for attempted armed robbery was made at the time of trial. Indeed, Carrao admits that defense counsel did not raise an objection to the jury instructions at the time of trial. The failure to object to a jury instruction results in the forfeiture[9] of any error in the instruction. *See* WIS. STAT. § 805.13(3). Furthermore, this court "has no power to reach an unobjected-to jury instruction." *See State v. Trammell*, 2019

---

[9] In *State v. Ndina*, our supreme court clarified the distinction between the terms "forfeiture" and "waiver." *See id.*, 2009 WI 21, ¶¶28-32, 315 Wis. 2d 653, 761 N.W.2d 612. "Although cases sometimes use the words 'forfeiture' and 'waiver' interchangeably, the two words embody very different legal concepts. 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.'" *Id.*, ¶29 (citation omitted). Thus, while the statute uses the term waiver, the appropriate term to apply here is forfeiture.

11

WI 59, ¶25, 387 Wis. 2d 156, 928 N.W.2d 564. Consequently, we reject Carrao's argument.

¶27 Last, to the extent that Carrao has raised an argument that his trial counsel was ineffective for failing to object to the jury instruction, we reject Carrao's argument as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). In his postconviction motion, Carrao's only reference to trial counsel not objecting to the jury instruction that the trial court gave regarding the attempted armed robbery as a party to a crime appears in the section where he argued that the trial court failed to follow any of the statutory procedures for amending the complaint and the information charging him with a new crime and, therefore, he was denied his right to due process. In that section, addressing the argument regarding the amendment, he stated, "For all of these reasons, the defendant respectfully requests that a hearing be held, pursuant to *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 ([Ct. App.] 1979) …to allow defense counsel to explain the reasons for his actions." He then added:

> The same holds true for counsel's failure to object to the [c]ourt's jury instructions regarding that offense. In that case, if, after a hearing, it is determined that counsel's actions were deficient and prejudicial to the defendant's right to a fair trial, the defendant's conviction for Attempted Armed Robbery should also be vacated on that ground.

Carrao did not develop any claim for ineffective assistance of counsel regarding the jury instruction before the postconviction court—he merely asked for a *Machner* hearing to address the issue. Thus, the postconviction court never addressed the issue of whether trial counsel was ineffective for failing to object to the jury instruction.

12

¶28    In his opening brief on appeal, Carrao again does not raise the issue of ineffective assistance of counsel in the section where he discussed the jury instruction.  Moreover, in the section where he argued that the court failed to follow any of the statutory procedures for amending the complaint and the information charging him with a new crime, he merely states, "It was argued that the same held true for counsel's failure to object to the [c]ourt's jury instructions regarding that offense."  It was not until the State argued in its response brief that trial counsel's failure to object to the jury instruction forfeited Carrao's argument that Carrao attempted to develop an argument that trial counsel was ineffective for not objecting to the instruction.  We do not consider arguments first raised in reply briefs.  *See **Bilda v. County of Milwaukee***, 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661.

### III.    The Addition of the Charge of Attempted Armed Robbery

¶29    Carrao additionally argues that he was denied due process when the State failed to follow the proper procedures to charge him with the crime of attempted armed robbery as a party to a crime, as it related to the incident involving Claire.  In particular, Carrao argues that he never had an initial appearance on the additional charge or had a preliminary hearing before the amended information was filed, and he further argues that he was never arraigned on the amended information.  Carrao further argues that the State failed to follow the proper procedure to request leave of the court to amend the charges.  In the alternative, Carrao argues that he received ineffective assistance of counsel as a result of his counsel's decision not to object to the additional charge.

¶30    The State argues that we must analyze Carrao's argument in the context of ineffective assistance of counsel as a result of trial counsel's decision

not to object to the additional charge. The State then argues that the record conclusively shows that Carrao's claim cannot succeed, both because counsel's performance was not deficient and because Carrao cannot show prejudice. Accordingly, as a threshold matter, we turn to the State's argument regarding counsel's decision not to object and its effect on how we may address Carrao's argument.

¶31 At the final pretrial conference, the trial court addressed the subject of the additional charge involving Claire. In explaining the decision not to object, Hopgood's trial counsel stated that the additional charge related to Claire was not a surprise and the State had provided discovery on the charge "several months ago." Carrao's trial counsel agreed to the addition of the charge and stated that "this was brought to my attention at a prior court date." He further stated, "We were given a copy of some relevant discovery. I shared with Mr. Carrao that this charge could be coming if we proceeded to trial." As a result of the discussion at the pretrial conference, we agree with the State that we must analyze Carrao's claim under the rubric of ineffective assistance of counsel. *See **State v. Carprue***, 2004 WI 111, ¶47, 274 Wis. 2d 656, 683 N.W.2d 31.

¶32 "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel." ***State v. Balliette***, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. A defendant must show two elements to establish that his or her counsel's assistance was constitutionally ineffective: (1) counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense. *Id.* We need not address both deficient performance and prejudice if the defendant fails to make a showing on one. *See **State v. Johnson***, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

14

¶33    "An ineffective assistance of counsel claim presents a mixed question of fact and law." *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95.  "We will not reverse the [trial] court's findings of fact unless they are clearly erroneous."  *Id.*  "We independently review, as a matter of law, whether those facts demonstrate ineffective assistance of counsel."  *Id.*

¶34    Initially, we note that Carrao argues that prejudice is assumed in this situation for the failure to follow the proper procedures for amending the charges filed against him.  However, Carrao's argument for per se prejudice is unsupported by relevant legal authority, and therefore, we reject his argument based on his argument of per se prejudice.  *See* *Pettit*, 171 Wis. 2d at 646-47.

¶35    Turning to the ineffective assistance analysis, we conclude that the record conclusively shows that Carrao suffered no prejudice within the meaning of the applicable standard for ineffective assistance of counsel and, consequently, that the trial court appropriately denied Carrao's motion without a hearing.  *See* *State v. Allen*, 2004 WI 106, ¶¶9, 14, 274 Wis. 2d 568, 682 N.W.2d 433.

¶36    Prejudice occurs when counsel's error is of such magnitude that there is a "reasonable probability" that but for the error the outcome would have been different.  *State v. Erickson*, 227 Wis. 2d 758, 769, 596 N.W.2d 749 (1999).  "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'  That requires a 'substantial,' not just 'conceivable,' likelihood of a different result."  *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citations omitted).

¶37    In this case, the outcome of Carrao's trial would not have changed because the amendment would still have been accepted if the proper procedure had been followed, and Carrao would have proceeded to trial on the charge related to

15

Claire in the same manner as he did. In rendering its decision on Carrao's motion, the trial court stated: "[I]f counsel had objected, the court could have paused the trial to allow the defendant to enter formal 'not guilty' pleas to the amended information. The court would not have rejected the amended information or complaint, and the outcome of the trial would not have changed." More importantly, though, the discussion at the pretrial conference demonstrates that Carrao's counsel was previously made aware of the potential charge related to Claire, had been provided discovery, and had been afforded the opportunity to prepare to defend against such a charge. Thus, there is not a substantial likelihood of a different result in this case and thus, no prejudice. Accordingly, we conclude that the trial court properly denied Carrao's motion on this point without a hearing because the record conclusively shows that Carrao's claim of ineffective assistance fails. *See Allen*, 274 Wis. 2d 568, ¶9.

### IV.    Sentencing Discretion

¶38    Carrao last argues that the trial court erroneously exercised its discretion at the time of sentencing, and he contends that his sentences should be modified because they are unduly harsh and unconscionable, as compared to the sentences of Carrao's co-actors. We conclude that the trial court appropriately exercised its discretion, and Carrao is not entitled to sentence modification.

¶39    We review whether the sentence imposed is unduly harsh and unconscionable for an erroneous exercise of discretion. *State v. Grindemann*, 2002 WI App 106, ¶30, 255 Wis. 2d 632, 648 N.W.2d 507. "We will not set aside a discretionary ruling of the trial court if it appears from the record that the court applied the proper legal standards to the facts before it, and through a process of reasoning, reached a result which a reasonable judge could reach." *Id.* We

presume that the trial court acted reasonably. *State v. Tappa*, 2002 WI App 303, ¶16, 259 Wis. 2d 402, 655 N.W.2d 223.

¶40 Carrao points to the sentences received by his co-actors to support his argument that he is entitled to sentence modification. He argues that his one co-actor—the alleged gunman—received no sentence because he was never identified. He then argues that his other co-actor, Hopgood, received a sentence of four years of imprisonment, even though Hopgood had a criminal record that was worse than Carrao's. Carrao further maintains that his conduct is less culpable than that of his co-actors because Carrao was simply the driver and he was only eighteen years old at the time of these two incidents.

¶41 We are not persuaded. Any disparity Carrao has identified between his sentence and those of his co-actors is easily explained because Carrao was not similarly situated with either of them. *See State v. Toliver*, 187 Wis. 2d 346, 362, 523 N.W.2d 113 (Ct. App. 1994) ("A mere disparity between the sentences of co-defendants is not improper if the individual sentences are based upon individual culpability and the need for rehabilitation."). Carrao's first co-actor, the alleged gunman, was never identified and was not available for sentencing. Carrao's second co-actor, Hopgood, was acquitted of two of the charges against him. Thus, Carrao faced sentencing on additional charges for which his unidentified co-actor and Hopgood were not. Furthermore, "[t]he court is not required to base its sentence determination on the sentences of other defendants." *Tappa*, 259 Wis. 2d 402, ¶20.

¶42 Importantly, the trial court considered the appropriate factors when it sentenced Carrao and looked not to any sentences imposed on Carrao's co-actors, but to Carrao himself to examine the gravity of the offenses, the protection of the

17

community, and the character of the defendant. *See State v. Gallion*, 2004 WI 42, ¶40, 270 Wis. 2d 535, 678 N.W.2d 197. At the sentencing hearing, the trial court emphasized that Carrao had an open pending felony case at the time he committed these crimes and should have known better. It also emphasized that Carrao had a side to him that "preys upon people" and that there appeared to have been a plan to trap women in their cars and rob them.

¶43 Moreover,

> [w]hen a defendant argues that his or her sentence is excessive or unduly harsh, a court may find an erroneous exercise of sentencing discretion "only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances."

*Grindemann*, 255 Wis. 2d 632, ¶31 (citation omitted). "A sentence well within the limits of the maximum sentence is unlikely to be unduly harsh or unconscionable." *State v. Scaccio*, 2000 WI App 265, ¶18, 240 Wis. 2d 95, 622 N.W.2d 449. Carrao's sentence is well within the maximum for convictions of two Class C felonies and one Class H felony. *See* WIS. STAT. §§ 943.32(2), 943.201(2)(a), 939.50(3) (stating that imprisonment for a Class C felony is not to exceed forty years and for a Class H felony is not to exceed six years). Accordingly, we discern no erroneous exercise of discretion in the imposition of Carrao's sentence, and we conclude that Carrao is not entitled to sentence modification.

## CONCLUSION

¶44 In sum, we conclude that the trial court properly denied Carrao's postconviction motion without a hearing. We reject Carrao's attempt to overturn

his convictions for insufficient evidence, and we conclude that there is sufficient evidence to support all three of Carrao's convictions. Further, due to Carrao's failure to object to the jury instructions, we do not reach the merits of Carrao's argument that the jury was erroneously instructed on the charge of attempted armed robbery. We also conclude that Carrao suffered no prejudice as a result of the amended information, and for that reason, we reject Carrao's argument for a new trial on this basis. Last, we conclude that the trial court appropriately exercised its discretion in imposing Carrao's sentence, and we therefore, reject his argument for sentence modification. For these reasons, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.