# COURT OF APPEALS
# DECISION
# DATED AND FILED

## May 7, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2126-CR**

Cir. Ct. No. 2020CF176

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

CINDY L. DOBBRATZ,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Juneau County: STACY A. SMITH, Judge. *Affirmed.*

Before Graham, P.J., Kloppenburg, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Cindy Dobbratz appeals a judgment of conviction for two counts of uttering a forgery and a circuit court order denying her postconviction motion without a hearing. Dobbratz asserts that she is entitled to an evidentiary hearing on her claims that she received constitutionally ineffective assistance of counsel at her jury trial. She also asks this court to grant a new trial in the interest of justice. We conclude that the record conclusively demonstrates that Dobbratz is not entitled to relief on her ineffective assistance claims, and that a new trial in the interest of justice is not warranted. We affirm.

## BACKGROUND

¶2 In 2020, the State charged Dobbratz with two counts of uttering a forgery for signing the name of her then-husband, A.B., on two forms associated with a joint 2019 tax return.[1] Dobbratz was also charged with identity theft for financial gain for allegedly using A.B.'s identifying information to open and use a credit card account without A.B.'s consent. In 2021, a jury found Dobbratz guilty on the forgery charges and not guilty of identity theft.

¶3 A.B. testified at trial. He testified that he and Dobbratz were in the process of divorcing in February 2020 and that, upon receiving a financial disclosure from Dobbratz in connection with the divorce proceedings, he learned that his 2019 taxes had been filed. He further testified that he had not given anyone permission to file the 2019 tax documents on his behalf. He obtained copies of the 2019 tax documents from the accountant who had prepared his and Dobbratz's tax returns in

---

[1] We refer to the victim using initials that do not correspond to his real name. *See* WIS. STAT. § 809.86(4). All references to the Wisconsin Statutes are to the 2023-24 version.

the past, and he testified that the signatures on his 2019 e-filing signature authorization form and federal bank account verification form were not his.

¶4    The accountant, Richard Chisick, also testified.  He testified that Dobbratz met with him on February 7, 2020.  She told Chisick that it was "probable" that she and A.B. were going to divorce and that she was "concerned that he may not sign the forms" required for a joint tax return.  Chisick nevertheless generated the necessary documents, and Dobbratz left, saying that she would attempt to get A.B.'s signature on them.  She returned with signed documents, and Chisick electronically filed the 2019 joint tax return.  Chisick further testified that later, when Chisick was working with Dobbratz on her 2020 tax return, Dobbratz told him she had signed A.B.'s name on the 2019 documents.  On cross-examination, Chisick testified that when he had prepared tax returns for Dobbratz and A.B. for other years before 2019, "they were both involved," although he recalled one time when A.B. "wasn't, but he later came and signed ... the return."

¶5    Following her conviction at trial, Dobbratz filed a postconviction motion raising two ineffective assistance claims.  In one claim, Dobbratz alleged that counsel was ineffective by failing to introduce evidence including text messages purportedly showing that A.B. gave his permission to Dobbratz to file an amended tax return for 2019, two documents on which Dobbratz purportedly affixed A.B.'s signature with his permission, and various documents that were purportedly signed by A.B.  In the other claim, Dobbratz alleged that counsel was ineffective by failing to object to the circuit court's inadvertent omission of language in the written jury instructions that, according to Dobbratz, made clear that the State was required to prove that the alleged forgery was not authorized by the alleged victim.  The court denied this motion without a hearing and rejected Dobbratz's additional argument that a new trial was warranted in the interest of justice.  Dobbratz appeals.

3

## DISCUSSION

¶6 Dobbratz renews her two ineffective assistance of trial counsel claims and her argument that she is entitled to a new trial in the interest of justice.

### I.  Ineffective Assistance of Trial Counsel

¶7 A claim of ineffective assistance of counsel requires Dobbratz to show that her trial counsel's performance was deficient and that she was prejudiced as a result.  *See **Strickland v. Washington***, 466 U.S. 668, 687 (1984).  To establish deficient performance, Dobbratz must allege facts to overcome the presumption that her trial counsel performed reasonably.  *See **State v. Balliette***, 2011 WI 79, ¶¶25-27, 336 Wis. 2d 358, 805 N.W.2d 334.  To establish prejudice, Dobbratz must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  ***State v. Sholar***, 2018 WI 53, ¶33, 381 Wis. 2d 560, 912 N.W.2d 89 (quoted source omitted).  Because Dobbratz has the burden of establishing both deficient performance and prejudice, we need not consider one prong if she has failed to establish the other.  *See **State v. Chu***, 2002 WI App 98, ¶47, 253 Wis. 2d 666, 643 N.W.2d 878.

¶8 A circuit court must hold an evidentiary hearing if a postconviction motion alleges sufficient facts that, if true, demonstrate both deficient performance and prejudice.  *See **State v. Allen***, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.  We review de novo the question of whether Dobbratz's postconviction motion alleged sufficient facts to require a hearing.  *Id.*  "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the circuit court then has discretion to deny a hearing.  *Id.*  We review the circuit court's decision to deny a hearing for an erroneous exercise of discretion.  *Id.*

4

¶9      We begin with Dobbratz's claim that trial counsel performed deficiently by failing to introduce certain evidence that Dobbratz argues "would have directly contradicted [A.B.'s] testimony." The evidence submitted with the postconviction motion consists of four exhibits that Dobbratz asserted would have "reduced [A.B.'s credibility] to nothing" on the issue of whether A.B. had given Dobbratz permission to sign the 2019 tax forms she was convicted of forging. As we now explain, Dobbratz fails to explain how any of these exhibits would have undermined the State's case against her.

¶10     Exhibit A shows undated text messages that were purportedly between A.B. and Dobbratz, including one that reads as follows: "Just sign it I'll give my permission keep this text paste it I [A.B.] TO SOGN FOR AMMENED TAXES." In her postconviction motion, Dobbratz made conflicting representations about the meaning of this message and how it pertained to the 2019 tax forms that she was accused of forging. At one point, the postconviction motion asserted that this message "clearly" shows that A.B. "not only gave her permission to sign amended tax forms for the 2019 year, but that he vehemently desired that she do so." At other points, the motion referred to Exhibit A as showing that Dobbratz had "permission to sign signature forms for amended 2017 and 2018 returns." But, as stated, there is no date evident on Exhibit A, and Dobbratz did not explain how this text message exchange would have been admitted into evidence absent testimony to authenticate it and provide context.

¶11     Regardless, we perceive no deficient performance on the part of trial counsel for failing to introduce Exhibit A at trial, because Dobbratz's forgery convictions were based on her signing, without permission, A.B.'s name on documents associated with an original 2019 tax return. More specifically, her convictions were premised on a 2019 e-filing signature authorization form and a

2019 federal bank account verification form, both of which were part of an original 2019 tax return, and the text exchange in Exhibit A does not show that A.B. gave Dobbratz permission to sign either of those documents on his behalf. Exhibit A purports to pertain to an amended return, but no amended 2019 tax return was ever introduced, at trial or afterward. Thus, on its face, this exhibit is relevant neither to the charges nor to A.B.'s credibility in testifying that he did not give Dobbratz permission to sign the original 2019 documents that she was accused of forging.

¶12    Nor do the other exhibits attached to Dobbratz's motion support Dobbratz's ineffective assistance claim. Exhibit B consists of documents that authorize the filing of 2017 and 2018 tax returns on paper forms, and that bear signatures dated "2/11/20" of both Dobbratz and A.B. In her postconviction motion, Dobbratz alleged that these are the "signature[s] [she] placed on the amended return[s]" pursuant to A.B.'s direction. Dobbratz further alleged that the documents in Exhibit B show that her rendering of A.B.'s signature on these documents is "not remotely the same" as either the signatures on the seven documents in Exhibit C, which she alleged A.B. actually signed, or the signature on the one document in Exhibit D, which is one of the documents she was convicted at trial of forging.

¶13    But even if we accept, as Dobbratz alleged in her motion, that she signed A.B.'s name on the documents in Exhibit B and that A.B. signed his name on the documents in Exhibit C, it is unclear how this evidence would, as Dobbratz asserted in her motion, "undermine[]" A.B.'s "denial that the signatures on the original tax forms [that Dobbratz was convicted of forging] were in fact his signatures." That the signature on the document that Dobbratz was convicted of forging appears to be similar to the signatures on documents she alleged A.B. signed himself—and, according to her, different from other examples where she signed A.B.'s name—could just as readily show that she was capable of signing A.B.'s

name convincingly. Nor do these exhibits contradict Chisick's trial testimony that Dobbratz admitted to him that she signed the original 2019 tax documents with A.B.'s name.

¶14 We conclude that Dobbratz has not met her burden to show deficient performance by trial counsel in failing to introduce the evidence in Exhibits A through D. We also conclude that the circuit court did not erroneously exercise its discretion in denying a hearing based on this evidence, because the record conclusively shows that the evidence does not support any claim of error by trial counsel.

¶15 We turn to Dobbratz's claim that trial counsel was ineffective by failing to object to the circuit court's inadvertent failure to include an alternative to the pattern jury instruction for forgery. When the court instructed the jury on the elements of uttering a forgery, it generally followed the pattern instruction from WIS JI—CRIMINAL 1492. Specifically, the court instructed the jury that the crime is committed when someone utters as genuine "a forged writing or object by which legal rights or obligation are created or transferred knowing that the writing or object was falsely made or altered." It then instructed the jury as to the four elements of forgery under WIS. STAT. § 943.38(2) as follows:

> [First, t]he tax preparation documents in this case were a writing … by which legal rights or obligations were created or transferred. Second element is the … endorsement was forged; that is, falsely made. Number three, the endorsement was uttered as genuine by the defendant. To utter … an endorsement as genuine simply means that the tax preparation documents were presented for use with a representation that the endorsement is genuine. Four, that the defendant knew the endorsement was falsely made at the time it was presented.

¶16 As to the second element, the circuit court did not include language that "[t]he [writing] must have been falsely made to appear to have been made by authority of someone who really did not give such authority." This language is an alternative listed in the pattern instruction for the second element, which the attorneys and the court had agreed would be read to the jury. *See* WIS JI—CRIMINAL 1492. Dobbratz alleged that trial counsel's failure to object to the omission of this language constituted ineffective assistance because it obviated the State's burden to prove that Dobbratz did not have A.B.'s permission to sign the documents on his behalf.

¶17 We conclude that Dobbratz has not met her burden to show that failure to object on this ground was prejudicial to her, and that the circuit court did not err in denying a hearing for that reason. In his closing argument, the prosecutor characterized the question for the jury as "whether or not [A.B.] consented to his signature or whether or not it was uttered as genuine by the defendant." Likewise, Dobbratz's trial counsel argued that "the consent or not the consent for what happened with these signatures" was based on A.B.'s words, which, counsel argued, there were reasons to doubt. Thus, the attorneys for both parties argued about whether the State had proven that A.B. did not authorize Dobbratz to sign the forms in question on his behalf, and the jury would have understood that if it had determined that the signatures were authorized, they would not have been "falsely made." When, as here, the parties clearly argued the issue of whether A.B. had given permission for Dobbratz to sign the relevant documents and there was no evidence to contradict A.B.'s testimony that he did not give his permission, omission of the "without authority" phrase in the jury instruction was not prejudicial to the defense.

## II. Reversal in the Interest of Justice

¶18    Dobbratz asks this court to grant a new trial in the interest of justice on the ground that the real controversy was not fully tried because the errors alleged in her ineffective assistance claims "prevent[ed] the jury from hearing all of the available evidence and further prevent[ed] the jury from being properly instructed at trial." *See* WIS. STAT. § 752.35 (allowing this court to reverse in its discretion "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried"). We deny the request. Dobbratz has not persuaded us that there was any error, let alone an error of sufficient magnitude to justify this extraordinary relief. *See **State v. Schutte***, 2006 WI App 135, ¶62, 295 Wis. 2d 256, 720 N.W.2d 469 (this court exercises its discretionary reversal power sparingly, and in only the most exceptional cases). For the reasons explained in rejecting Dobbratz's ineffective assistance of counsel claims, we conclude that the interest of justice does not support granting a new trial.[2]

## CONCLUSION

¶19    For the foregoing reasons, we affirm the judgment and order of the circuit court.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[2] In opposing discretionary reversal, the State appears to argue that this court should consider as a relevant factor that the trial took place over three years before Dobbratz requested this relief in her postconviction motion. The State does not cite, and we are not aware of, any case law that connects that particular fact to the standard that we must apply in addressing this issue.